## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MISTER SOFTEE, INC., MISTER SOFTEE SALES AND MANUFACTURING, LLC, and SPABO ICE CREAM CORP., | Civ. No. 2:14-CV-01687(KM)(MCA) |
| **Plaintiffs,** | **OPINION** |
| **v.** | |
| REZA AMANOLLAHI, | |
| **Defendant.** | |

**MCNULTY, U.S.D.J.:**

This matter comes before the Court on the motion (Docket No. 9) of the Plaintiffs, Mister Softee, Inc. ("MSI"), Mister Softee Sales and Manufacturing, LLC, ("MSSM") and SPABO Ice Cream Corp. ("SPABO") (collectively referred to as "Mister Softee" or the "Mister Softee Plaintiffs"), pursuant to Fed. R. Civ. P. 65, for a preliminary injunction against Defendant, Reza Amanollahi ("Amano").[1] Plaintiffs request that the Court enjoin Amano from using Mister Softee's federally registered trademarks and from competing with Mister Softee, in violation of the non-compete clause in the Franchise Agreements entered into between Mister Softee and Amano.

I have reviewed the parties' submissions and heard oral argument on this matter on June 12, 2014. The parties agreed that an evidentiary hearing was not required. For the reasons set forth below, the Court is persuaded that Plaintiffs have met their burden of showing that an injunction is warranted. Plaintiff's motion for a preliminary injunction will therefore be granted.

---

[1]    No disrespect is intended or should be inferred. Throughout the papers and at oral argument, both parties referred to the Defendant as "Ray Amano," and apparently Defendant himself finds it convenient to use this shortened version of his name.

## I. BACKGROUND

As acknowledged by the parties during oral argument, the material facts are largely undisputed. Those facts, as outlined below, are gleaned from the parties' submissions as well as from oral argument.

### A. The Parties

MSI is a New Jersey Corporation and the franchisor of Mister Softee mobile ice cream trucks. Those trucks are set up to sell soft-serve and hard ice cream as well as frozen desserts, novelties, stick items, and other products. Docket No. 9-1 ("Pl. Br.") at 1; Docket No. 1 ("Compl.") ¶ 9. MSSM is a New Jersey limited liability company that customizes and sells Mister Softee trucks for use by licensees and franchisees of Mister Softee, Inc. Compl. ¶ 3. SPABO is a New York corporation and a sub-franchisor of MSI. SPABO has the exclusive right to sell Mister Softee franchises in certain areas, including the Bronx, New York. Compl. ¶ 4.

Mister Softee owns the trademarks "Mister Softee," related logos, and a musical jingle, all registered on the Principal Register of the United States Patent and Trademark Office (Registration Nos. 2128918, 0667335, 0663456, and 2218017). Pl. Br. at 2; Compl. ¶ 11. Mister Softee also owns a federal trademark registration for the overall design of the Mister Softee ice cream truck (No. 2906357). Mister Softee franchisees are licensed to use Mister Softee's trademarks and trade dress and to operate under the Mister Softee business system.

The Defendant, Mr. Amano, is a New Jersey resident, Compl. ¶ 5, and a franchisee of Mister Softee.[2] On June 20, 2007, Amano entered into eight Franchise Agreements with SPABO. Pl. Br. at 3; Compl. ¶ 19. On January 1, 2012, he entered into fourteen more Franchise Agreements with SPABO. *See* Compl., Exhibit B ("Franchise Agreements"). All Franchise Agreements are substantially similar and the parties do not cite any material differences between

---

[2]      As will be explained more fully below, the parties have a dispute over the ultimate legal issue of who currently owns the franchises. Amano's position is that he sold his franchises to four other individuals who currently operate the Mister Softee trucks and that he is no longer a Mister Softee franchisee. During oral argument, however, Amano's counsel conceded that, "on paper," Amano is still the franchisee. He nonetheless submits that he is not the "de facto" franchisee. It is undisputed that his name appears on each of the twenty-two Franchise Agreements.

them. In total, Amano was granted the right to operate twenty-two Mister Softee franchises (each representing one truck) in Bronx County, New York. Pl. Br. at 3; Compl. ¶ 19, Exhibit B. Under the terms of the Franchise Agreements, Amano was authorized to park his trucks only at 337 Manida Street, Bronx, New York ("Manida Street Depot").

Amano also entered into two Truck and Equipment Sale Agreements with MSSM. Amano, as purchaser of the trucks, signed a promissory note requiring installment payments until the purchase price was paid in full. Compl. ¶ 21, Exhibit C.

Amano maintains that he was not given a prospectus at the time that he signed the various Franchise Agreements "with one possible exception." Def. Br. at 1; Docket No. 12 ("Amano Affidavit") ¶ 14 ("Of all the trucks I operated, I may have received one prospectus."); Amano Transcript at 46:17–47:5. Mister Softee submits that Peter Bouziotis, Secretary and Treasurer of SPABO Ice Cream Corp., offered Amano a Franchise Disclosure Document before Amano signed the Franchise Agreements, but that Amano refused to accept it "because he claimed he was a franchisee for approximately 10 years, and knew everything he needed to know about the Mister Softee system." Docket No. 18 (Pl. Reply") at 9–10; Docket No. 18-2 ("Bouziotis Affidavit") ¶ 2.

## B. The Franchise Agreement Provisions, Proposed Transfer, and Termination

The Franchise Agreements contain various provisions that Plaintiffs maintain that Amano violated, resulting in termination of the agreements. Plaintiffs also submit that Amano voluntarily abandoned the agreements. Pursuant to Section 6.15 of the Franchise Agreements, Amano was required to park and store his Mister Softee trucks at a Mister Softee-sanctioned depot or storage yard. This requirement ensures that franchisees can store their trucks in a place that has electricity and running water so that franchisees can clean the trucks and ensure the safe storage of the ice cream products. Amano was assigned the Manida St. Depot in the Bronx. Pl. Br. at 4.

The Franchise Agreement also contains a non-compete provision. It provides that Amano cannot, for a two-year period, "directly or indirectly own, maintain, engage in, be employed by, lend money to, extend credit to, or have any interest in any other business which operates or licenses business featuring primarily the sale or ice cream or other frozen confections with the former

3

Territory or within any System franchisee's territory."[3] Franchise Agreement §
16.2.

Pursuant to Section 18.2, the Franchise Agreements can be terminated
immediately upon delivery of notice of termination if Amano breaches an
agreement with Mister Softee. Pursuant to Section 18.2.11, the Agreements can
be terminated if Amano voluntarily abandons his franchises or if he does not
park his trucks in the designated depot. Pl. Br. 4–5.

According to Plaintiffs, Amano clearly manifested his intent to abandon
the Franchise Agreements and operate his trucks independent of Mister Softee.
For instance, he has ceased making payments and has moved his trucks from
the designated Manida Street Depot, in contravention of Section 6.15 of the
Franchise Agreements. Pl. Br. at 5; Compl. ¶¶ 33–33.

Amano does not deny that he abandoned his Mister Softee franchises and
maintains that he is out of the retail ice cream business. He states that he
participates in the ice cream industry only at the wholesale level, and as manager
of the Tsirkos depot. Amano does not deny moving his trucks from the designated
Manida Depot. He submits that he moved his trucks to the Tsirkos depot in Long
Island City in response to a dispute with Mister Softee owner James Conway.
Docket No. 17 ("Def. Br.") at 1–2.

In 2009, Amano decided to sell his franchises to four men (the "four
transferees")—Anthony Tsaros, Thomas Fotinakopoulos, Michael Vasiardis, and

---

[3]   The non-compete provision reads in its entirety as follows:

> For a two (2) year period following the expiration or termination of your
> interest in this Agreement, neither you nor your immediate family
> members, nor your partners, shareholders or members, nor their
> immediate family members, as applicable, shall directly or indirectly, for
> themselves or through, on behalf of, or in conjunction with any other
> person, partnership, corporation, limited liability company; or other entity,
> own, maintain, engage in, be employed by, lend money to, extend credit
> to, or have any interest in any other business which operates or licenses
> business featuring primarily the sale or ice cream or other frozen
> confections with the former Territory or within any System franchisee's
> territory.

Franchise Agreement § 16.2.

4

Tommy Dalageorges[4]—who operated out of the Tsirkos depot. Amano and the four transferees met with James Conway of SPABO in New Jersey and Conway agreed to the transfer proposals.[5] Amano submits that, though the Franchise Agreements are still in his name, he is the franchisee only "on paper," not in reality. Amano contends that Mister Softee never wanted to put these transfer agreements in writing, but that all parties have operated under these agreements *de facto* for the last five years. Thus, Amano says, he has been collecting royalties from the four transferees. He also collects note payments in cash from the men. Conway sends someone (oftentimes Conway's son) to Amano's place of business to pick up the cash. *Id.* at 2–3. Amano says that he performs these functions, not in his role as franchisee, but in his role as manager of the Tsirkos depot.

Mister Softee, for its part, does not deny that it knew Amano intended to transfer his franchises to the four transferees. Mister Softee submits, however, that Amano is still in the process of an installment sale of his trucks, and continues to be the responsible franchisee. To secure the buyers' payment obligations, Amano retained title to the franchises until the final tenth annual payment was made in 2019. Docket No. 18 ("Pl. Reply") at 1. Once the final payments were made, Amano would transfer the franchises pursuant to Section 17 of the Franchise Agreements.[6]

On February 18, 2014, Mister Softee sent Amano a Notice of Termination, which he received on February 19, 2014. Compl. ¶ 35, Exhibit E. The Notice of Termination advised Amano that the Agreements were terminated because he: (1) moved his trucks to an unapproved depot; (2) failed to make payments under the various promissory notes; and (3) abandoned his franchises. Pl. Br. 5. The Notice of Termination and receipt thereof terminated the Franchise Agreements.

---

[4]   To be clear, these are the individuals referred to in the parties' papers as "Tommy, Tommy, Mike and Tony."

[5]   Amano maintains that these four transferees were the real parties in interest to the fourteen Franchise Agreements that were signed in 2012. He concedes that the "agreements were in Amano's name," but maintains that "he is not the actual franchisee." Def. Br. at 2.

[6]   Pursuant to Section 17, SPABO had the right to approve any proposed assignment of the Franchise Agreements by Amano to third parties.

Under the Franchise Agreements, upon termination of an agreement, Amano is required to:

> 19.1. Cease using the Proprietary Marks, Copyrights and Confidential Information.
>
> . . .
>
> 19.3.   Return to SPABO the music box in [Amano's] Mister Softee vehicle, to SPABO, and return the Operations Manual and all other materials containing Confidential Information or reflecting the Proprietary Marks and Copyrights.
>
> 19.4. Remove from your vehicle all Proprietary Marks and Copyrights and provide SPABO satisfactory evidence that these items have been removed; or, in the alternative, [Amano] may return the vehicle to SPABO's headquarters for removal of these items.

Plaintiffs submit that, because the franchises are now terminated, Amano is infringing the Mister Softee trademark by operating ice cream trucks using the Mister Softee Mark without permission. He has allegedly violated the Agreements by failing to de-identify his trucks (*i.e.*, remove words and insignia identifying the trucks as Mister Softee trucks). He has also allegedly failed to return certain Mister Softee copyrighted material. *See* Franchise Agreement §§ 19.1, 19.3, 19.4. Plaintiffs also allege that Amano has violated the post-termination provisions of the Franchise Agreements because his trucks continue to operate in his former territory and in the territory of other Mister Softee franchisees, in violation of his non-complete obligations. Finally, Amano allegedly owes certain amounts under the Agreements.

On March 14, 2014, Plaintiffs filed a Complaint in this Court. In their Complaint, Plaintiffs assert several claims against Amano, which include: Trademark Infringement and Unfair Competition (Count 1); Breach of Contract-Post Termination Non-Compete (Count II); Breach of Contract-Future Royalties (Count III); Breach of Contract-Truck Notes (Count IV); and Unjust Enrichment (Count V). In his Answer, Docket No. 19, Amano denies all of Plaintiffs' allegations and alleges counterclaims against Plaintiffs, including breach of contract and rescission of the Franchise Agreements. Docket No. 19.

On April 14, 2014, Plaintiffs filed this motion for a preliminary injunction. Plaintiffs seek an order restraining Amano from unlawfully using Mister Softee's trademarks and violating the non-compete agreements contained in the

Franchise Agreements. Docket No. 9. On June 12, 2014, I heard oral argument on the motion. At oral argument, Plaintiffs provided the Court with supplemental briefing on the issue of rescission of a franchise agreement based on the franchisor's failure to provide a prospectus under New York law. Docket No. 24. The Court granted Amano a week in which to file a responding brief, and Amano did so on June 18, 2013. Docket No. 28.[7]

## II. DISCUSSION

Now before the Court is Plaintiffs' motion for preliminary injunctive relief. "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (numbering added); *accord American Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012). Plaintiffs argue that the four preliminary injunction factors weigh in their favor and that this Court should enjoin Amano from continuing to use Mister Softee trademarks and from violating the non-compete provision of the Franchise Agreements. As explained below, I find that the Mister Softee plaintiffs are entitled to injunctive relief.

Before doing so, I point out that this action bears a close relationship to a case decided just a few weeks ago by District Judge Laura Taylor Swain. *Mister Softee, Inc. v. Tsirkos*, No. 14-CIV-1975, 2014 WL 2535114, at *7 (S.D.N.Y. June 5, 2014). That case, like this one, involved Mister Softee's application for a preliminary injunction. The franchise agreement at issue was substantially identical to the one at issue here, and the territory, like the one here, was in New York City. The defendant franchisee, like Amano here, at some point stopped paying royalties and stopped parking the trucks at the designated depot. In what may be a remarkable coincidence, and may be more, the franchisee in that case was one Dmitrios Tsirkos. Tsirkos is the very landlord who owns the depot of which Amano is now manager, where the trucks in this case are now parked and stored, contrary to the Franchise Agreements. In the Tsirkos case (unlike this one) there was at least a colorable defense to trademark infringement, because Tsirkos altered the trucks slightly (for example, they were marked "Soft King" or "Master Softee," and they no longer used the musical jingle).

---

[7]     Plaintiffs have also filed an amended proposed order and a letter in support of the order. Docket Nos. 25, 26.

Judge Swain found a likelihood of confusion, and a likelihood of success on the claim of trademark infringement. As in many commercial trademark infringement cases, the court had no trouble finding irreparable harm to plaintiffs' business good will, and found that there was a public interest in preventing consumer confusion. As to the non-compete clause, she applied New York law. She denied a claim for rescission, very similar to the one made here, because there was evidence that a prospectus was offered, and that any failure to provide one had not been shown to be material and willful. As to the reasonableness of the covenant, she noted that the territory covered some 100 miles, containing a population of millions, and that it broadly barred the former franchisee from any aspect of the ice cream business. She credited testimony that, in light of the short selling season, two years was not an unreasonable time to establish a replacement franchisee. Consequently, she narrowed the scope of the restrictive covenant. The franchisee was prohibited from competing in the *retail* ice cream business, within a *five mile* radius of his former territories in the Bronx, for a period of two years. That holding was well supported by citations to New York case law. 2014 WL 2535114 at *9.

Judge Swain entered her decision after a full evidentiary hearing and a more complete presentation than the same counsel proffered here. It was perhaps because of that recent experience that counsel agreed that no evidentiary hearing would be necessary in this case.

## A. Likelihood of Success on the Merits

The first preliminary injunction factor requires the applicant to show that it is likely to prevail at the ultimate trial on the merits. *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990); *see also* Wright & Miller, Federal Practice and Procedure, § 2948 (while "courts use a bewildering variety of formulations of the need for showing some likelihood of success . . . [a]ll courts agree that plaintiff must present a prima facie case but need not show that he is certain to win.") Failure to establish a likelihood of success on the merits, even standing alone, is fatal to an application for a preliminary injunction. *American Express*, 669 F.3d at 366, 374.

Amano does not deny that the Mister Softee trademarks and trade dress deserve protection under federal law. But since he is the franchisee "only on paper," he argues, any injunctive relief would be futile and unnecessary because he is not the person who now operates the Mister Softee trucks. In regard to the non-compete provision, Amano makes two distinct arguments. First, he submits that Mister Softee's failure to provide him with the prospectuses associated with

8

each agreement is grounds for rescission. He adds in the alternative that the non-compete provision is unreasonable in terms of duration and scope and is not reasonably necessary to protect Mister Softee's business interests.

### 1. **Trademark Infringement**

To state a claim for trademark infringement, 15 U.S.C. § 1114, and unfair competition, 15 U.S.C. § 1125(a)(1), under the Lanham Act, a plaintiff must show three elements: "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000).

There is little or no doubt that *somebody* is infringing a valid trademark owned by Mister Softee. First, the marks are valid and legally protectable because they have been registered in accordance with Section 1051 of the Lanham Act, 15 U.S.C. § 1051. Second, Mister Softee owns these marks. *See Coach, Inc. v. Cosmetic House*, No. 10 Civ. 2794, 2011 WL 1211390, *2 (D.N.J. Mar. 29, 2011) (citing 15 U.S.C. §§ 1057(b), 1115(a)) (A "certificate of registration issued by the United States Patent and Trademark Office constitutes prima facie evidence of the validity and ownership of a disputed mark" and is therefore sufficient to establish the first and second elements of trademark infringement and unfair competition claims.) Third, the trucks are using Mister Softee's exact marks, leading to inevitable confusion. *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371 (3d Cir. 1992).[8]

Amano does not deny that the Franchise Agreements were terminated, nor does he deny that the Mister Softee trademarks are entitled to protection under federal law. He does not dispute that the trucks are currently being operated, despite the termination of the Franchise Agreements, without any effort to remove the Mister Softee identifiers and marks. He has also failed to return the copyrighted materials to Mister Softee.

---

[8]    In *S & R Corp.*, a franchisor brought an action seeking to enjoin a franchisee's continued use of the franchisor's trademark following the termination of the franchise agreement. The Third Circuit reversed and remanded the district court's denial of preliminary injunctive relief. The Court held that there was a great likelihood of confusion when an infringer uses the same legally protectable trademark. *Id.* at 375. The Court also found that the franchisee's use was unauthorized because Jiffy Lube had formally terminated the franchisee's License Agreement. *Id.* at 376.

Amano nonetheless maintains that Mister Softee is unlikely to succeed on the merits because the four transferees, not Amano, are the ones actually operating the trucks and using the proprietary materials. An injunction against Amano, according to him, would therefore be "superfluous and unwarranted." Def. Br. at 4. He argues that, if Mister Softee wants to stop the infringement in the territories alleged in the Complaint, it will have to sue the four transferees.

Amano, however, is still the owner of the franchises; he is the signer of the twenty-two Franchise Agreements on which Mister Softee bases its claims. He says he is the franchisee only "on paper," but the "paper" in question is a binding contract. Under the Agreements, Amano is the person obligated to de-identify the trucks, return all copyrighted and trademarked materials, and cease using them. No one denies that these trucks are still in use and are still selling Mister Softee products under the Mister Softee trademark.

Amano has outsourced the operation of the infringing trucks, but he is still the responsible party. The four transferees have not taken over the franchises; even if the franchises had not been cancelled, the actual transfer would not have taken place earlier than 2019, when the last instalment payment was made on the notes. Having maintained title to the trucks, and stayed on the Agreements as franchisee to secure that debt, Amano cannot walk away from that status for purposes of these claims only.

Even on the generous assumption that Amano no longer exercises any control over the Mister Softee trucks, I am nevertheless persuaded that Plaintiffs are likely to succeed on a claim for contributory infringement. An individual can be liable under the Lanham Act even where the individual did not "actually mislabel goods with the mark of another." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 853-54, 102 S. Ct. 2182, 2188, 72 L. Ed. 2d 606 (1982). An individual may be secondarily liable if "a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorially responsible for any harm done as a result of the deceit." *Id.* at 854. "The theory of contributory infringement, as it came to be known, requires proof of either an intent to induce another to infringe a trademark or continued supply of goods or services to one whom the supplier (contributory infringer) knows or has reason to know is engaging in trademark infringement." *800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273, 280 (D.N.J. 2006) (citing *Id.*) While a person who knowingly and significantly participates in another's act of

10

infringement may be liable, "there does not appear to be any aider and abetter liability under the Lanham Act." *Katiroll Co. Inc. v. Kati Roll & Platters Inc.*, No. 10-CIV-3620, 2012 WL 3061152, at *4 (D.N.J. July 26, 2012) (quoting *Parker v. Google, Inc.*, 422 F.Supp.2d 492, 503 (E.D. Pa. 2006), *aff'd* 242 Fed. Appx. 833 (3d Cir. 2007)).

The Third Circuit has recognized that the contributory infringement doctrine need not be confined to manufacturers and that "other courts have expanded it beyond that particular origin." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1432 (3d Cir. 1994) (citing *Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.*, 967 F.2d 1516, 1522 (11th Cir. 1992) (doctrine could hold franchisor liable for infringing actions of its franchisee when "franchisor explicitly or implicitly encouraged the trademark violations"); *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992) (landlord of flea market could be liable for its tenant's sale of an infringing product where the landlord is found to have been "wilfully blind" to the infringing acts)).

Some courts have applied the doctrine to landlords who are aware of their tenants' infringing behavior and to parties providing services to those the parties know to be committing infringement. *See L & L Wings, Inc. v. Marco-Destin, Inc.*, 676 F. Supp. 2d 179, 191-92 (S.D.N.Y. 2009) (applying contributory infringement liability to defendants who "did not provide a concrete product" but "provided a service"); *Polo Ralph Lauren Corp. v. Chinatown Gift Shop*, 855 F. Supp. 648, 650 (S.D.N.Y. 1994) (sustaining claim for contributory liability for landlords who allowed trademark infringers to use their property); *Habeeba's Dance of the Arts, Ltd. v. Knoblauch*, 430 F.Supp.2d 709, 714–15 (S.D. Ohio 2006) (sustaining claim for contributory liability for landlords who allowed trademark infringers to use their property).

Amano is currently supplying ice cream products to the four transferees currently operating the Mister Softee trucks. He was collecting their royalty payments and (at least for a time) forwarding them to Mister Softee. (Amano Dep. Tr. at 42:3-43:23). Their infringing sales are certainly the source of the four transferees' payments to Amano on the promissory notes. He is profiting from their infringement, and he is indisputably aware of it.

Amano admits to providing assistance to the infringers in the form of depot services, including overnight parking and storage, in return for rental payments. Pl. Reply at 7 (citing Amano Dep. Tr. 38:7–21, 42:3-43:23). The depot in question is an unauthorized site under the Agreements Amano signed.

And the court is not blind to the fact that Amano is managing the depot as an employee of Tsirkos, another defaulting franchisee who has continued to use Mr. Softee's trademarks on his trucks. Amano does not really deny any of this.

What Amano is saying is that an order against him would be futile. He denies the ability to stop what admittedly constitutes infringement by the four transferees. One is tempted to observe that a padlock on the Tsirkos Depot might do the trick. Amano complains that he cannot take action against the four transferees without exposing himself to liability. Without making a finding on the matter, I observe that it is a fair inference that Amano in effect took the transferees' money in return for permitting them vicariously to enjoy his rights as a franchisee, and then abandoned the franchise. At the very least, it can be said that it is Amano's own twilight, instalment semi-transfer of his franchise that has created the situation of which he complains. And in any event Amano may be ordered, as requested, to cease his own acts of infringement and contributory infringement.

This Court has the ability, pursuant to Fed. R. Civ. P. 65(d)(2)(C), to bind "other persons who are in active concert or participation with" the parties of an action and those parties' agents or officers so long as the "other persons" have actual notice of an injunctive order. *See Marshak v. Treadwell*, 595 F.3d 478, 488 (3d Cir. 2009) (reasoning that persons "in active concert or participation" with an enjoined party are also bound by the injunction, and may not aid or abet the violation of the injunction"). If relief turns out to be incomplete, Plaintiffs may have to pursue other remedies against other persons. But I can order, as requested, that Amano comply with his post-termination duties under the Agreements and discontinue his acts of trademark infringement.

Plaintiffs have demonstrated that they are likely to succeed on the merits of their trademark infringement claim against Amano.

### 2. **Enforcement of the Non-Compete Provision**

Plaintiffs also seek to enjoin Amano from competing in his former territories and those of any other Mister Softee franchisee for two years. That application is based on the Franchise Agreements' non-compete provision:

> For a two (2) year period following the expiration or termination of your interest in this Agreement, neither you nor your immediate family members, nor your partners, shareholders or members, nor their immediate family members, as applicable, shall directly or indirectly, for themselves or through, on behalf of, or in conjunction with any other person, partnership, corporation,

limited liability company; or other entity, own, maintain, engage in, be employed by, lend money to, extend credit to, or have any interest in any other business which operates or licenses business featuring primarily the sale or ice cream or other frozen confections with the former Territory or within any System franchisee's territory.

Franchise Agreement § 16.2.[9]

Amano argues that the non-compete provision is unenforceable and that injunctive relief should be denied because he is entitled to rescission of the Franchise Agreements pursuant to the New York Franchise Act, New York General Business Law Section 691.[10] Plaintiffs, he says, failed to provide Amano with a prospectus as required by Section 683(8) of the Act. He also submits that the non-competition provision is unreasonable in scope.

a. Rescission under the NY Franchise Sales Act

The New York Franchise Sales Act governs the sale of franchises. New York General Business Law Section 691 provides as follows:

A person who offers or sells a franchise in violation of section six hundred eighty-three . . . of this article is liable to the person purchasing the franchise for damages and, if such violation as willful and material, for rescission, with interest at six percent per

---

[9]   Plaintiffs seek to enforce the non-compete provision in the following New York Boroughs and Counties: Brooklyn, Bronx, Queens, Manhattan, Suffolk County, and Nassau County (the "Closed Territories"). Docket No. 21. Plaintiffs submit that Mister Softee franchisees are currently assigned to territories that collectively encompass all of these Closed Territories.

[10]   Pursuant to Section 22.1, New York law governs all disputes arising out of the Franchise Agreements, which would include disputes arising out of the enforcement of the non-compete provision.

Additionally, this section contains a forum selection clause, designating the state court in Bronx, New York, or the U.S. District Court for the Southern District of New York as the forums for any litigation arising out of the Franchise Agreements. Here, neither party has raised the issue of the forum selection clause and Amano has filed counterclaims to Plaintiffs' Complaint. Taking into account the parties' conduct in this matter, they appear to have waived the forum selection provision. *See Wachovia Bank Nat. Ass'n v. EnCap Golf* Holdings, LLC, 690 F. Supp. 2d 311, 328 (S.D.N.Y. 2010) (citations omitted) (explaining that a forum selection clause can be deemed waived "where the party invoking it has taken actions inconsistent with it, or delayed its enforcement, and other parties would be prejudiced").

year from the date of purchase, and reasonable attorney fees and court costs.

N.Y. Gen. Bus. Law § 691 (McKinney). Section 683(8) requires that a franchisor provide a prospective franchisee with a copy of the offering prospectus, together with a copy of all proposed agreements relating to the sale of the franchise . . . " *Id.* § 683(8). "The legislature's stated intention in enacting the Franchise Sales Act provisions of the General Business Law was to 'to prohibit the sale of franchises where such sale would lead to fraud or a likelihood that the franchisor's promises would not be fulfilled.'" *Mister Softee, Inc. v. Tsirkos*, No. 14-CIV-1975, 2014 WL 2535114, at *7 (S.D.N.Y. June 5, 2014) (quoting N.Y. Gen. Bus. Law § 680 (McKinney 2012)).

Amano submits that he was not provided a prospectus for each Franchise Agreement and that Plaintiffs' failure to provide it was material and willful. He therefore "elects to rescind all such franchise agreements made within the period of the applicable statute of limitations." Def. Br. at 5. As to these rescinded agreements, he says, there can be no effective restrictive covenant against competition.

There is a threshold problem with this argument. Section 691(4) of the Franchise Sales Act limits the right of a franchisee to seek rescission to three years from the date of the establishment of the franchise. *United Magazine Co. v. Murdoch Magazines Distribution, Inc.*, 146 F. Supp. 2d 385, 407 (S.D.N.Y. 2001), *aff'd*, 279 F. App'x 14 (2d Cir. 2008). "Courts applying this provision have ruled that the limitations period begins to run when the franchise contract is entered into, and that continuous violations do not toll the statute of limitations." *Id.* (citing cases).

Here, it is undisputed that Amano signed eight Franchise Agreements in June 2007. He did not move for rescission until 2014, well outside of the three-year statute of limitations. Therefore, pursuant to Section 691(4), these eight Franchise Agreements are not subject to rescission under Section 691 of the Franchise Act. Because each Agreement contains an identical non-compete provision, the effect of enforcing the non-compete provision would be similar even if only one Franchise Agreement—let alone eight—were enforceable. The rescission argument, then, is ineffectual.

There is also a question of whether or not SPABO failed to provide him with a prospectus. In addition, Amano has not provided any evidence of willfulness or materiality. Thus, even as to timely claims for rescission, Plaintiffs have demonstrated that they are likely to succeed.

14

The statute does not define "provide." As articulated by Judge Swain in *Mister Softee v. Tsirkos*, however, the common, plain-English meaning of "provide" is "to supply or make available." 2014 WL 2535114, at *7 (quoting Merriam-Webster's Collegiate Dictionary 940 (10th ed. 1999)).

Amano acknowledges, for example, that he "may" have received one prospectus. Def. Br. at 1; Docket No. 12 ("Amano Affidavit") ¶ 14 ("Of all the trucks I operated, I may have received one prospectus."). Mister Softee submits that Peter Bouziotis, Secretary and Treasurer of SPABO Ice Cream Corp., offered Amano a Franchise Disclosure Document before Amano signed each Franchise Agreement, but that Amano refused to accept them "because he claimed he was a franchisee for approximately 10 years, and knew everything he needed to know about the Mister Softee system." Pl. Reply at 9–10; Bouziotis Affidavit ¶ 2. Amano also does "remember seeing the prospectus in Southern Boulevard Depot's office," but denies ever declining one. Amano Dep. Tr. 47:2–10. Certainly Bouziotis has submitted that he made a prospectus available, and Amano has failed to maintain a consistent position as to whether he received a prospectus.

At any rate, there is no evidence that any failure to provide a prospectus was willful or material. N.Y. Gen. Bus. Law Section 691 specifically requires a showing of materiality and willfulness in order for a franchisee to successfully rescind a franchise agreement. N.Y. Gen. Bus. Law § 691 (providing that "if such violation as willful and material," a franchisee may utilize the civil remedy of rescission).

Willfulness requires a showing that a plaintiff "intentionally violated the act." *Mister Softee, Inc. v. Tsirkos*, 2014 WL 2535114, at *7 (quoting *Reed v. Oakley*, 172 Misc. 2d 655, 658 (Sup. Ct. 1996), *aff 'd*, 240 A.D.2d 991 (1997); *Vysovsky v. Glassman*, 01 Civ. 2531, 2007 WL 3130562, at * 12 (S.D.N.Y. Oct. 23, 2007)). The record before me indicates that Bouziotis tried to supply Amano with a prospectus and that Amano admits he "may" have actually received one. He also remembers seeing a prospectus in the Southern Boulevard Depot's office. Amano submits no evidence that Plaintiff intentionally failed to provide him with a prospectus and Bouziotis states that he did attempt to fulfill the disclosure requirement. Accordingly, there is no sufficient indication that Plaintiffs' alleged violation was willful. See *Mister Softee v. Tsirkos*, 2014 WL 2535114, at *7 (finding, under similar circumstances, that nothing "in the current record indicates that such violation was willful" and instead reasoning

that plaintiffs' evidence indicates "that they intended to comply with the prospectus delivery requirement").

Furthermore, I do not find any evidence to indicate that the alleged violation was material to either damages sustained by Amano or to his decision to enter into the Franchise Agreements. Amano summarily argues that it was, but his contentions are generic. Thus he argues that *all* information in a prospectus is, by its very nature, material.[11] To find that a prospectus is always and everywhere material would render the materiality requirement meaningless, or at least superfluous. Instead, Courts have required a showing that the non-disclosure was material to the franchisee's decision to invest or that it caused some ascertainable damage. *See BMW Co., Inc. v. Workbench, Inc.*, No. 86-CIV-4200, 1988 WL 45594, at *2 (S.D.N.Y. Apr. 29, 1988) ("Moreover, since I do not find that defendants' violation of the Franchise Act was material to plaintiffs' investment decisions, rescission of the franchise agreement under § 691(1) is denied."); *Burgers Bar Five Towns, LLC v. Burger Holdings Corp.*, 71 A.D.3d 939, 941, 897 N.Y.S.2d 502, 504 (2010) ("Moreover, even if the defendants violated the Franchise Sales Act by failing to register an offering prospectus, the plaintiff must still prove that it sustained damages as a result of the violation, and must further prove that the violation was "willful and material" in order to be entitled to an award of an attorney's fee."); *Baker Boys of Glendale, Inc. v. 35-63 82nd St. Corp.*, 166 A.D.2d 397, 398-99, 560 N.Y.S.2d 465, 467 (1990) (reversing lower court's granting of summary judgment in favor of franchisee and granting summary judgment in favor of franchisor "where defendants did not submit anything of an evidentiary nature to support the conclusory allegation in their attorney's affirmation that the plaintiff's alleged nondisclosure was willful, nor did the defendants even allege that the purported nondisclosure was material").

---

[11]   Like the defendant in *Mister Softee v. Tsirkos*, Amano relies on *Pagham Chicken Inc. v. Loghar*, 1986 N.Y. Misc., LEXIS 3164. In *Pagham*, the franchisor failed to register with New York state, as required under the Franchise Act, failed to create a prospectus, and failed to offer a prospectus to the franchisee. *Id.* at 17–18. The court held that the franchisor failed to comply with the Act. Amano contends that this case stands for the proposition that Amano's prior experience is of no consequence when considering a violation under the Franchise Act. *Id.* at 20 ("Both the astute business person and the credulous are entitled to protection, and compliance with the act cannot be determined by how much the franchise actually knew absent financial disclosure." *Pagham* does not, however, stand for the proposition that a franchisor is liable *per se* for a violation of the disclosure requirement. A showing of willfulness and materiality is still required. Amano appears to recognize this in his supplemental briefing. Docket No. 28 at 2.

The underlying purpose of the Franchise Act is to prohibit "the sale of franchises where such sale would lead to fraud or a likelihood that the franchisor's promises would not be fulfilled." *Mister Softee v. Tsirkos*, 2014 WL 2535114, at \*7. There is no evidence of materiality or wilfullness—*i.e.*, no evidence that any alleged non-disclosure in this case is connected to any unfulfilled promise or to fraud by SPABO. The Franchise Act's rescission provision was not intended to shield a franchisee from complying with terms and obligations he willingly agreed to undertake.

In light of the foregoing, I am persuaded that Plaintiffs are likely to defeat Amano's claim for rescission of the Franchise Agreements, and that they are therefore likely to succeed in establishing that the non-compete provisions are binding on Amano.

### b. Reasonableness of the Non-Compete Provision

I now turn to Amano's secondary argument—that the non-compete provisions are unreasonable in scope. I find that the provision as written is overly broad to the extent that it prohibits both retail and wholesale sales of ice cream products. I will also limit the geographic scope of the provision to a five mile radius. I will leave intact the two-year noncompetition period. In doing so, I find the reasoning of Judge Swain in *Tsirkos* to be persuasive. I also think that there is an independent value in consistent application of the same franchise agreements in the same territories.

"New York has adopted the common-law standard of reasonableness for the evaluation of restrictive covenants." *Mister Softee v. Tsirkos*, 2014 WL 2535114, at \*8. Under this reasonableness standard, a non-compete provision is reasonable only "if it is (1) no greater than is required for the protection of the legitimate interest of the [beneficiary], (2) does not impose undue hardship on the [restricted party], and (3) is not injurious to the public." *Id.* (quoting *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 388 (1999)). "In this context a restrictive covenant will only be subject to specific enforcement to the extent that it is reasonable in time and area, necessary to protect the [beneficiary's] legitimate interests, not harmful to the general public and not unreasonably burdensome to the [restricted party]." *Id.* (citation and internal quotation marks omitted). Thus a restrictive covenant is enforceable when it is reasonable in terms of "time, space or scope" and is not oppressive in its operation. *Am. Inst. of Chem. Engineers v. Reber-Friel Co.*, 682 F.2d 382, 386 (2d Cir. 1982).

This restrictive covenant would bar Amano from competing in both the retail and wholesale ice cream business for a period of two years in Brooklyn, Bronx, Queens, and Manhattan as well as Suffolk and Nassau Counties (*i.e.,* all of New York City, excepting Staten Island, and all of Long Island). Amano contends that the provision is not reasonably necessary for the protection of the Mister Softee business. He points out that Mister Softee franchisees already compete with each other, that Mister Softee has no product control and therefore presumably no goodwill to protect, and that there is nothing unique about "selling ice cream out of a truck." Def. Br. at 5; Amano Affidavit ¶¶ 22–27. Amano complains that the provision is designed to put him out of business. He argues that the provision is geographically overbroad, and that its subject matter is overbroad in that it applies to both the retail and wholesale supply business.

In general, New York courts have upheld similar, although certainly not identical, covenants that are related to the protection of a franchisor's know-how and its ability to place new franchisees in the same territories. *See Carvel Corp. v. Eisenberg*, 692 F. Supp. 182 (S.D.N.Y. 1988) ("[R]estrictive covenant, which prohibited franchisees from operating ice cream store within two miles of their present location for three years after franchise was terminated, was reasonably related to plaintiff's interest in protecting its know-how, so as to be enforceable."); *Carvel Corp. v. Rait*, 117 A.D.2d 485, 503 N.Y.S.2d 406 (N.Y. App. Div. 1986) (same); *DAR & Associates, Inc. v. Uniforce Servs., Inc.*, 37 F. Supp. 2d 192, 200 (E.D.N.Y. 1999) (upholding provision restricting former licensee, a professional staffing business, from competing within a fifty mile radius of former place of business for one year); *TKO Fleet Enterprises, Inc. v. Elite Limousine Plus, Inc.*, 184 Misc. 2d 460, 464, 708 N.Y.S.2d 593, 596 (N.Y. Sup. Ct. 2000) *aff'd*, 286 A.D.2d 436, 729 N.Y.S.2d 193 (2001) (upholding restrictive covenant that restricted former limousine franchisee from competing within fifty miles of Times Square for one year). *But see Reed, Roberts Associates, Inc. v. Strauman*, 40 N.Y.2d 303, 306, 353 N.E.2d 590 (1976) (affirming denial of injunction seeking enforcement of covenant prohibiting former employee "from engaging in the business of unemployment tax control within the metropolitan area for a period of three years" because employee did not have any trade secrets and because his work was not "so unique or extraordinary" as to necessitate the restriction).

Plaintiffs have made a sufficient showing that the non-compete provision is reasonable to the extent it protects Mister Softee's brand name and business goodwill, and its ability to replace terminated franchisees. Mister Softee's

distinctive trademarked trucks and music are indicative of business goodwill that is protectable, and authorized, non-terminated franchisees should have their investment protected to that extent.

The durational component—two years—is not overly long. As Judge Swain found, it is also appears reasonable in light of the short selling season (April to October, typically). Two six-month selling cycles are not an unreasonable span for Plaintiffs' efforts to replace terminated franchisees and get new ones on their feet. *See Mister Softee v. Tsirkos*, 2014 WL 2535114, at *9.

The subject matter of the ban is appropriate insofar as it applies to the retail sale (mobile and fixed) of ice cream, the very business in which Amano was engaged as a franchisee. I do not, however, find that Plaintiffs have established the reasonableness of the covenant to the extent it covers wholesale activity. (Of course, I do not mean to authorize wholesale activity that contributes to the infringement of Mister Softee's marks. *See supra.*) A ban on wholesale supply does not tend to protect the legitimate investment-backed expectations of Mister Softee's other retail franchisees.

I also find that Plaintiffs have not demonstrated a likelihood of success in showing that the vast geographic scope of the restriction is reasonably necessary. Like Judge Swain, I will revise this covenant so that it applies only in a five-mile radius of Amano's former Manhattan and Bronx territories. *See Tsirkos, supra; cf. Singas Famous Pizza Brands Corp. v. New York Adver. LLC,* 468 F. App'x 43, 46 (2d Cir. 2012) (finding a "ten-mile geographic scope of the Franchise Agreement's post-termination non-compete clause" to be reasonable, rejecting the defendants' argument that it was unreasonable because "[p]izza restaurants are inherently local.")

Amano contends that the overbroad scope of the non-compete clause renders it wholly unenforceable. I do not agree. Under New York law, a court has the power to partially enforce an overly broad non-compete provision if the plaintiff seeks "to protect a legitimate business interest." *Mister Softee v. Tsirkos*, 2014 WL 2535114, at *9 (citing *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 394, 712 N.E.2d 1220, 1226 (1999)).

> Where "the unenforceable portion is not an essential part of the agreed exchange, a court should conduct a case specific analysis, focusing on the conduct of the [beneficiary] in imposing the terms

19

of the agreement." *BDO Seidman,* 93 N.Y.2d at 394. New York has rejected the strict divisibility, or "blue pencil," requirement, instead embracing flexible partial enforcement of restrictive covenants. *BDO Seidman,* 93 N.Y.2d at 395. However, "[a] court should not attempt to partially enforce a non-compete provision where its infirmities are so numerous that the court would be required to rewrite the entire provision." *Leon M. Reimer & Co. v. Cipolla,* 929 F.Supp. 154, 160 (S.D.N.Y. 1996).

*Id.* That is what I have done; I have enforced the non-compete provision to a great extent, but disallowed the portions that were unreasonably broad.

My restrictions on the scope of the non-compete provision do not destroy or undermine its overall purpose. Indeed, it would be perverse to allow Amano to nullify the non-compete clause on that basis. Both parties agreed to a broad non-compete clause; if any party is prejudiced by the court's decision to restrict its scope, it is Mister Softee, not Amano.

Accordingly, I will limit the scope of the non-compete provision to retail ice cream activity (both mobile and fixed), with a five-mile radius of Amano's former territories, for a period of two years.

### B. Irreparable Harm

Plaintiffs have established harm to their businesses if Amano continues to use (or contributorily infringe) Mister Softee marks. They also have established harm to their business goodwill and client relationships if the non-compete clause is not enforced. Amano does not make any argument specific to this prong of the preliminary injunction analysis.

Harm is considered "irreparable" if it is not redressable by money damages at a later date, in the ordinary course of litigation. *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 801 (3d Cir. 1989) (citing *Sampson v. Murray,* 415 U.S. 61, 90 (1964)). As discussed above, see Section III.A.1, *supra,* Mister Softee has demonstrated a likelihood of confusion. This Circuit has recognized that "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of good will." *Kos Pharm., Inc. v. Andrx Corp.,* 369 F.3d 700, 726 (3d Cir. 2004) (quoting *Pappan Enters., Inc. v. Hardee's Food Sys.,* Inc., 143 F.3d 800, 805 (3d Cir. 1998)). An inference of irreparable injury is almost mandatory; "trademark infringement amounts to irreparable injury as a matter of law." *Id.* (quoting *S & R Corp.,* 968 F.2d at 378).

I also find that an injunction is appropriate here because monetary

damages are inadequate to compensate Plaintiffs for trademark infringement that is ongoing. *See Opticians Ass'n of Am.*, 920 F.2d at 195 (reasoning, in the context of a preliminary injunction, that "[g]rounds for finding irreparable injury include loss of control of reputation, loss of trade, and loss of good will"). Amano's continued infringing activity threatens Mister Softee's reputation and goodwill. The remedy of injunctive relief will protect Plaintiffs against the threat of future infringement, a threat that cannot be averted by compensatory relief alone. *See Coach, Inc. v. Bags & Accessories*, CIV.A. 10-2555 JBS-J, 2011 WL 1882403, at *9 (D.N.J. May 17, 2011) (citation omitted) (concluding that while "a remedy at law would provide a degree of monetary relief," it would "not compensate for the injury" to plaintiff's "reputation or necessarily prevent future trademark infringement").[12]

   I have no difficulty, then, in finding irreparable harm.

---

[12] As to loss of client relationships and good will, I am handicapped somewhat by the lack of a fully developed evidentiary record. It is not implausible that customers may have a brand loyalty to a particular ice cream. Counsel for Plaintiffs also argued that a Mister Softee franchise would have less value, and Mister Softee would have greater difficulty finding replacement franchisees, if the non-compete provisions were not enforced. It is certainly the case that damage to customer relations and loss of business good will can cause damage that is very difficult to quantify in dollars. *See generally Johnson Controls Inc. v. A.P.T. Critical Sys. Inc.*, 323 F. Supp. 2d 525, 532 (S.D.N.Y. 2004) ("Generally, when a party violates a non-compete clause, the resulting loss of client relationships and customer good will built up over the years constitutes irreparable harm") (quoting *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69–70 (2d Cir. 1999)); *Singas Famous Pizza Brands Corp. v. New York Adver. LLC*, 468 F. App'x 43, 46 (2d Cir. 2012) ("Courts applying New York law have recognized that restrictive covenants in franchise agreements are also necessary to neutralize the 'danger that former franchisees will use the knowledge they have gained from the franchisor to serve its former customers, and that continued operation under a different name may confuse customers and thereby damage the good will of the franchisor.'") (quoting *ServiceMaster Residential/Commercial Servs., L.P. v. Westchester Cleaning Servs.*, Inc., No. 01–CV–2229, 2001 WL 396520, at *3 (S.D.N.Y. Apr. 19, 2001); *MarbleLife, Inc. v. Stone Res., Inc.*, 759 F. Supp. 2d 552, 563 (E.D. Pa. 2010) (irreparable harm prong satisfied where defendant's "actions of operating a stone care and restoration business nearly identical to the one it operated for ten (10) years as a MarbleLife franchise, servicing the same territory, using the customer list from the franchise, and using nearly identical advertisements, reaps the good will that MarbleLife ha[d] established"). As to the product loyalty of the ice-cream buying, juvenile public, I am not so certain, although the Court has observed a certain Pavlovian response to the Mister Softee musical jingle.

## C. Balancing the Equities and the Public Interest

The final two prongs, balancing of the harms and the interest of the public, also weigh in favor of granting injunctive relief.

Amano will not be unduly burdened by an injunction. The only "hardship" imposed upon Defendant is that he refrain from engaging in unlawful infringement and abide by the terms (some of them rendered less onerous by the Court) of the contracts that he freely entered into. It has been held that, where a defendant fails to perform his obligations under a franchise agreement, that "self-inflicted harm is far outweighed by the immeasurable damage done" to the franchisor by the infringement of its trademark. *S & R Corp.*, 968 F.2d at 379. I agree and find that the harm posed to Mister Softee outweighs the harm to Amano. *See Opticians Ass'n of Am.*, 920 F.2d at 197 (infringing defendant can "hardly claim to be harmed, since it brought any and all difficulties occasioned by the issuance of the injunction upon itself").

Finally, the public interest would not be disserved by issuing an injunction. To the contrary, injunctive relief will prevent consumer confusion and enforce reasonable contractual obligations. *See Pappan Enterprises, Inc.*, 143 F.3d at 807 (quoting *Opticians*, 920 F.2d at 197) ("Public interest can be defined a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused."). As to the non-compete provisions, I have already taken the public interest into account in restricting their scope.

## D. Security

Pursuant to the Federal Rules, this Court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined . . . ." Fed. R. Civ. P. 65(c). Plaintiffs submit that they should be required to post a bond in the amount of $1,000.00. Amano makes no response, but that dollar amount seems very low. Weighing the potential harm to an already-terminated franchisee against the likelihood that the injunction is incorrect, I will require that security be posted in the amount of $50,000.

## E. Injunctive Relief

In light of the foregoing, I will grant Mister Softee the following injunctive relief:

Mister Softee's Motion for Preliminary Injunction is **GRANTED**, on the following terms:

1. Reza Amanollahi and his agents, employees and any persons acting in concert with him who have actual knowledge of this injunction are hereby enjoined from:

> a. unlawfully using Mister Softee's trademarks or trade dress or any colorable imitation thereof;

> b. knowingly contributing to the infringement of Mister Softee's trademarks or trade dress in any manner whatsoever including, but not limited to:

>> i. renting or otherwise providing space to park or store ice cream trucks at a commissary or depot to entities or individuals unlawfully using Mister Softee's trademarks or trade dress or any colorable imitation thereof; and

>> ii. selling or otherwise providing ice cream products, ice cream mix, other frozen confections, and the supplies and equipment necessary to operate an ice cream truck business to individuals or entities that unlawfully use Mister Softee's trademarks or trade dress or any colorable imitation thereof;

2. In accordance with the relief granted above, Reza Amanollahi must immediately eject Thomas Fotinakopoulos, Anthony Tsaros, Michael Vasiardis and Tommy Dalageorgos and any entities or individuals in active concert or participation with them from any depot or commissary he owns, operates or manages. Furthermore, Reza Amanollahi is enjoined from renting, selling or supplying space at a depot or commissary to Thomas Fotinakopoulos, Anthony Tsaros, Michael Vasiardis and/or Tommy Dalageorgos and/or any entities or individuals in active concert or participation with them.  Reza Amanollahi is enjoined from selling or otherwise providing ice cream products, ice cream mix, other frozen confections, and the supplies and equipment necessary to operate an ice cream truck business to Thomas Fotinakopoulos, Anthony Tsaros, Michael Vasiardis, Tommy Dalageorgos and any entities or individuals in active concert or participation with them;

3. Reza Amanollahi, his officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Reza Amanollahi who receive actual notice of this injunction, shall return to Mister Softee all labels, signs, prints, packages, wrappers, receptacles, and advertisements bearing the word and/or symbol that is the subject of Mister Softee's trademarks, trade dress, or trade name violation or reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, matrices, and other means of making the same pursuant to 15 U.S.C. § 1118, including all Mister Softee decal packages, music boxes that play the Mister Softee jingle, and Mister Softee menu boards;

4. Reza Amanollahi, his officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Reza Amanollahi who receive actual notice of this injunction are further enjoined from, directly or indirectly, owning, maintaining, engaging in, being employed by, lending money to, extending credit to, or having any interest in any other business which operates or licenses businesses featuring primarily the **retail** sale of ice cream or other frozen confections within a **five-mile radius** of Defendant's former territories, which are:

   a. Manhattan: Northern boundary – 57th Street, Southern boundary – 54th Street, Western boundary – 6th Avenue, Eastern boundary – the East River;

   b. Manhattan: Northern boundary – 65th Street, Southern boundary - 60th Street, Western boundary - 5th Avenue and Eastern boundary – the East River;

   c. Manhattan: Northern boundary - 45th Street, Southern boundary – 42nd Street, Eastern boundary – the East River and Western boundary – 8th Avenue;

   d. Manhattan: Northern boundary - 54th Street, Southern boundary – 51st Street, Western boundary – 6th Avenue and Eastern boundary – the East River;

   e. Manhattan: Northern boundary – 42nd Street, Southern boundary - 40th Street, Western boundary – the Hudson River and

Eastern Boundary – the East River;

f. Manhattan: Northern boundary – 51st Street, Southern boundary - 45th Street, Eastern boundary - 8th Avenue and Western boundary – the East River;

g. Manhattan: Northern boundary - 40th Street, Southern boundary - 37th Street, Western boundary – the Hudson River and Eastern boundary – the East River;

h. Manhattan: Northern boundary - 60th Street, Southern boundary – 57th Street, Western boundary – 6th Avenue and Eastern boundary – the East River;

i. Manhattan: Northern boundary - 40th Street, Southern boundary – 37th Street, Western boundary – 5th Avenue and Eastern boundary – 3rd Avenue;

j. Bronx: Northern boundary – Bronx Park South, Southern boundary – East 178th Street, Western boundary – Crotona Avenue and Eastern boundary – Boston Road;

k. Manhattan: Northern boundary - 43rd Street, Southern boundary – 40th Street, Western boundary – 5th Avenue and Eastern boundary –3rd Avenue;

l. Manhattan: Northern boundary - 46th Street, Southern boundary – 43th Street, Western boundary – 5th Avenue and Eastern boundary – 3rd Avenue;

m. Bronx: Northern boundary – Rhinelander Avenue, Southern boundary – East Tremont Avenue, Western boundary – White Plains Road and Eastern boundary – from East Tremont Avenue north on Bronxdale Road to north on Mulier Avenue for all of Mulier Avenue;

n. Manhattan: Northern boundary - 44th Street, Southern boundary – 40th Street, Western boundary – 3rd Avenue and Eastern boundary – FDR Drive;

25

o. Manhattan: Northern boundary – 37th Street, Southern boundary – 34th Street, Western boundary – 3rd Avenue and Eastern boundary – FDR Drive;

p. Manhattan: Northern boundary – 40th Street, Southern boundary – 37th Street, Western boundary – 3rd Avenue and Eastern boundary – FDR Drive;

q. Manhattan: Northern boundary – 52nd Street, Southern boundary – 48th Street, Western boundary – 3rd Avenue and Eastern boundary – FDR Drive;

r. Manhattan: Northern boundary - 48th Street, Southern boundary – 44th Street, Western boundary – 5th Avenue and Eastern boundary – 3rd Avenue;

s. Manhattan: Northern boundary - 37th Street, Southern boundary – 34th Street, Western boundary – 5th Avenue and Eastern boundary – 3rd Avenue;

t. Bronx: Northern boundary - 178th Street, Southern boundary – Cross Bronx Expressway, Western boundary – Crotona Avenue and Eastern boundary – Boston Road;

u. Manhattan: Northern boundary – 52nd Street, Southern boundary – 48th Street, Western boundary – 5th Avenue and Eastern boundary – 3rd;

v. Manhattan: Northern boundary - 48th Street, Southern boundary – 44th Street, Western boundary – 3rd Avenue and Eastern boundary – FDR Drive;

5. Reza Amanollahi is further enjoined from directly or indirectly, owning, maintaining, engaging in, being employed by, lending money to, extending credit to, or having any interest in any other business which operates or licenses businesses featuring primarily the retail sale of ice cream or other frozen confections in Mister Softee franchisee territories that are within five miles of Reza Amanollahi's former franchise territories listed above in Paragraph 5 a through v, with the exception that he may continue to collect amounts due and owing on credit

26

extended prior to the date of this order;

6. This preliminary injunction shall remain in effect until a determination on the merits is reached in this Court or for a period of two years from the date of this Order, whichever occurs first.

7. As a condition of the foregoing relief, Mister Softee shall post a bond in the amount of Fifty thousand dollars ($50,000.00) pursuant to Federal Rule of Civil Procedure 65(c).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction, Docket No. 9, is **GRANTED**. An appropriate Order follows.

**KEVIN MCNULTY**
**United States District Judge**

DATED: July 1, 2014

27