## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

<table>
<tr>
<td>

**MISTER SOFTEE, INC., MISTER SOFTEE SALES AND MANUFACTURING, LLC, and SPABO ICE CREAM CORP.,**

    **Plaintiffs,**

   **v.**

**REZA AMANOLLAHI,**

    **Defendant.**

</td>
<td>

Civ. No. 2:14-CV-01687(KM)(JBC)

**OPINION**

</td>
</tr>
</table>

**MCNULTY, U.S.D.J.:**

Before the Court are two motions by the Plaintiffs, Mister Softee, Inc. ("MSI"), Mister Softee Sales and Manufacturing, LLC ("MSSM"), and Spabo Ice Cream Corp. ("Spabo"). (I will generally ignore the distinction and refer to the plaintiffs collectively as "Mister Softee.") Mister Softee moves pursuant to Fed. R. Civ. P. 56 for summary judgment against Defendant Reza Amanollahi ("Amano")[1] (No. 108), and for release of an injunction bond obligation (No. 128). An Order and Opinion by this Court dated July 1, 2014, (Nos. 29–30), granted a preliminary injunction to enjoin Amano from infringing Mister Softee's federally registered trademarks and from violating non-compete provisions in twenty-two Mister Softee Dealer Franchise Agreements (the "Franchise Agreements").[2] *See Mister Softee, Inc. v. Amanollahi*, 2:14-CV-01687 KM MCA, 2014 WL 3110000 (D.N.J. July 1, 2014) (hereinafter, "*Amanollahi I*"). A condition of the July 1, 2014 Order was Mister Softee's filing of a $50,000 bond

---

[1]  For the reasons stated in my July 1, 2014 Opinion, and consistent with both parties' briefing, the Court will refer to the Defendant as "Amano."

[2]  The preliminary injunction was ordered for a period of two years, expiring July 1, 2016.

to secure Amano in the event he was found to have been wrongfully enjoined. (*See* No. 31). Mister Softee now seeks to have that bond released.

Mister Softee's motion for summary judgment asks this Court to permanently enjoin Amano from using Mister Softee's federally registered trademarks and from violating the non-compete provisions. Mister Softee also moves for summary judgment on claims not previously determined at the preliminary injunction stage. Plaintiffs seek a ruling that they are entitled as a matter of law to: (1) lost future royalties under the Franchise Agreements; (2) amounts due under two promissory notes on ice cream truck sales (the "Truck Notes"); (3) recovery under a theory of unjust enrichment of amounts MSSM spent to repair Amano's ice cream trucks; and (4) attorney's fees under the terms of the Franchise Agreements and Truck Notes as well as under the Lanham Act, 15 U.S.C. § 1117. Moreover, the Plaintiffs seek summary judgment in their favor on Amano's counterclaims for (1) rescission of all 22 Franchise Agreements under the New York Franchise Act, N.Y. Gen. Bus. Law § 680 (the "NYFA"), and (2) breach of contract under the 22 Franchise Agreements.

For reasons set forth below and in my Opinion accompanying the July 1, 2014 Order, the Court is persuaded that Plaintiffs have met their burden of showing that a permanent injunction is proper as to both infringement of Mister Softee's trademarks and enforcement of the (now expired) non-compete provisions. Plaintiff's motion for summary judgment on this issue will therefore be granted. Because I am satisfied that Amano was not wrongfully enjoined, Mister Softee's motion for release of the injunction bond will also be granted.

Additionally, summary judgment will be granted in favor of Mister Softee for recovery of the balance due under the Truck Notes, entitlement to Attorney's fees, and on Amano's counterclaims. Summary judgment will be denied as to Mister Softee's entitlement to future royalties and recovery under a theory of unjust enrichment.

2

## I. BACKGROUND

I assume the parties' familiarity with the facts in this case, most of which have not changed since I issued my July 1, 2014 Order and Opinion. For clarity, those facts are summarized below, along with new facts put forth in connection with the instant motion.

### A. The Parties

MSI is a New Jersey Corporation and the franchisor of Mister Softee mobile ice cream trucks. Those trucks are set up to sell ice cream and other food products and novelties. (Pl. Br. 4–5; Compl. ¶ 9).[3] MSSM is a New Jersey

---

[3]  For purposes of this opinion, citations to the record will hereinafter be abbreviated as follows:

Complaint (ECF No. 1) = Compl.

Franchise Agreement, Reino Cert., Ex. D (ECF No. 108-4-6) = FA

Truck Note, Reino Cert., Ex. E (ECF No. 108-6) at Exs. B = TN

Defendant's Brief in Opposition to Plaintiff's Motion for Preliminary Injunction (ECF No. 17) = Def. PI Br.

Plaintiff's Reply Memorandum of Law in Support of Their Motion for Preliminary Injunction (ECF No. 18) = Pl. PI Reply

Amended Answer (ECF. No. 79) = Am. Answer

Plaintiff's Memorandum of Law in Support of Their Motion for Summary Judgment (ECF No. 108-1) = Pl. Br.

Certification of James F. Conway, Jr. In Support of Plaintiffs' Motion for Summary Judgment (ECF No. 108-2) = Conway Cert.

Certification of Frank A. Reino in Support of Plaintiffs' Motion for Summary Judgment (ECF No. 108-3) = Reino Cert.

Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment (ECF No. 118) = Def. Br.

Certification of Steen T. Keppler in Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 119) = Keppler Cert.

Certification of Reza Amanollahi in Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 121) = Amano Cert.

Plaintiff's Reply Memorandum of Law in Support of Their Motion for Summary Judgment (ECF No. 123) = Pl. Reply

Plaintiffs' Statement of Undisputed Material Facts (ECF No. 125) = Pl. SUF

limited liability company that constructs and sells Mister Softee trucks for use by licensees and franchisees of MSI. (Pl. Br. 4). Spabo is a New York corporation and a sub-franchisor of MSI. Spabo has the exclusive right to sell Mister Softee franchises in certain regions of the New York City boroughs of Manhattan and the Bronx. (*Id.*)

MSI owns the trademarks for "Mister Softee," related logos, and (as any area resident can attest) a musical jingle, all registered on the Principal Register of the United States Patent and Trademark Office (Registration Nos. 2128918, 0667335, 0663456, and 2218017). (*Id.* at 5). Mister Softee also owns a federal trademark registration for the overall design of the Mister Softee ice cream truck (No. 2906357). Spabo licenses the right to use MSI's trademarks to its franchisees under the Franchise Agreements. (*Id*). The Franchise Agreements require franchisees to paint their Mister Softee trucks in a particular blue and white color scheme, with decals of MSI's trademarked logos. (*Id.* at 8). The Franchise Agreements also govern other aspects of the relationship between franchisees and either MSI or one of its sub-franchisors—in this case, Spabo. (*Id.* at 5).

The defendant, Mr. Amano, is a New Jersey resident and a franchisee of Mister Softee. (Compl. ¶¶ 5, 19; Pl. Br. at 8). On June 20, 2007, Amano entered into eight Franchise Agreements with Spabo. (Pl. Br. 8; Compl. ¶ 19). On January 1, 2012, he entered into fourteen more Franchise Agreements with Spabo, bringing the total to twenty-two. (*Id.*). All Franchise Agreements are substantially similar. (*see* FAs). The Franchise Agreements directed Amano to abide by several operating conditions, including that he park his trucks only at 337 Manida Street, Bronx, New York ("Manida Street Depot") (Pl. Br. 9; Compl. ¶ 20).

---

Defendant's Counterstatement of Material Facts in Opposition to Plaintiffs' Motion for Summary Judgment (ECF No. 127) = Def. Counter.

Amano also entered into two Truck and Equipment Sale Agreements with MSSM. Amano, as purchaser of the trucks, signed two Truck Notes attendant to those agreements, dated June 1, 2009. The Truck Notes obligated Amano to make instalment payments until the purchase price of the trucks were paid in full. (Pl. Br. 8; *see* TNs).

### B. The Franchise Agreement and Truck Note Provisions

The following provisions of the Franchise Agreements are relevant:

- **Section 3.1** sets the term of the Franchise Agreements at ten years, "unless earlier terminated in accordance with [the Franchise Agreement]."

- **Section 4.2**[4] directs that Amano shall pay annual royalties to Spabo equal to: (1) the greater of $1.70 per gallon of soft-serve ice cream or frozen dessert mix purchased or $3,400.00 and (2) $0.38 per dozen of hard ice cream and frozen dessert novelties purchased.

- **Section 5** provides that MSI and/or Spabo will provide training to Amano (§ 5.1); loan an operations manual to Amano (§ 5.2); provide periodic assistance to Amano as Spabo deems appropriate (§ 5.3); consult with Amano on initial and continuing inventory (§ 5.4); and provide Amano with continuing consultation and advice as Spabo deems advisable (§ 5.5).

- **Section 6.15** requires Amano to park and store his Mister Softee trucks at a Mister Softee-sanctioned depot or storage yard. There is no dispute that Amano was assigned to the Manida Street Depot. (*see* Pl. Br. at 9).

- **Section 9** provides that Amano is to deliver all payments due to Spabo on time (though no schedule is specified), with overdue payments acquiring interest at the lesser of 18% annually or the maximum rate permitted by law. Section 9 also provides, in part: "If you are in breach or default of any monetary or nonmonetary material obligation under this Agreement or any related agreement between you and Spabo, Mister

---

[4]     Mister Softee's briefing mistakenly attributes this provision to Section 6.1. It appears at Section 4.2 in all 22 agreements.

Softee and/or their affiliates, and Spabo and/or Mister Softee engages an attorney to enforce its rights (whether or not formal judicial proceedings are initiated), you shall pay all reasonable attorney's fees, court costs and litigation expenses."

- **Section 16.2 (the "non-compete provision")** provides that Amano cannot, for a two-year period, "directly or indirectly own, maintain, engage in, be employed by, lend money to, extend credit to, or have any interest in any other business which operates or licenses business featuring primarily the sale or ice cream or other frozen confections with the former Territory or within any System franchisee's territory."

- **Section 18.2** provides that Spabo has the right to terminate the Franchise Agreements without an opportunity for cure, effective upon delivery of notice of termination, if Amano commits certain breaches or defaults. Pursuant to Section 18.2.4, the Agreements can be terminated upon breach of any other agreements between Amano and Mister Softee. Pursuant to Section 18.2.11, the Agreements can be terminated if Amano voluntarily abandons his franchises or if he does not park his trucks in the designated depot.

- **Section 19** sets forth post-termination obligations of former franchisees, including, *inter alia*, ceasing use of and returning all trademarked items and other intellectual property; paying Spabo and Mister Softee any fees and monies owed; and complying with the non-compete provisions.

- **Section 20** provides that all notices, requests, and reports to be given under the terms of the Franchise Agreements are to be in writing and delivered by hand or mail with a return receipt requested.

- **Section 22.3** provides: "As a condition precedent to commencing an action for damages or for violation or breach of this Agreement, you must notify Spabo within thirty (30) days after the occurrence of the violation or breach and failure to timely give notice shall preclude any claim for damages."

The following provisions of the Truck Notes are also relevant:

- **Section 11.1** permits MSSM to immediately accelerate all payments and other amounts due under the Truck Note in the event Amano defaults

under the Truck Notes or, by cross-reference to Section 10 of the Truck Notes, under any Franchise Agreements.

- **Section 13** provides that if MSSM uses an attorney to enforce "this obligation" or protect the collateral under the Truck Note, Amano shall pay MSSM the collection costs "and the costs of suit, including attorney's fees and costs in any appeal taken . . . ."

### C. Proposed Transfer, Termination, and Plaintiffs' Claims

Amano alleges that in 2009, he sold his franchises to four other individuals: Thomas Fotinakopoulos, Anthony Tsaros, Michael Vasiardis, and Tommy Dalageorgos (the "four transferees"), and has not personally engaged in the retail sale of ice cream since that time. (Def. Br. 2–3; Amano Cert. ¶¶ 5–6, 13). The four transferees operated out of an ice cream truck depot owned by another former Mister Softee franchisee, which is located in Long Island City (the "Tsirkos depot").[5] At some point after the sale of the franchises, Amano became the manager of the Tsirkos depot. (Def. PI Br. 1–3; Amano Cert. ¶¶ 9–10). Later, in 2012, Amano managed a commissary at Spabo's Manida Street Depot. (Amano Cert. ¶ 16).

The parties do not dispute that Mister Softee was aware of and approved Amano's sales to the four transferees, nor do they dispute that following the sales, Amano remained responsible for collecting royalties and forwarding them to Spabo. (*See, e.g.*, Def. Br. 8 n.7). The parties' explanations as to why Amano retains this responsibility differ slightly, however.

Amano alleges this responsibility was the upshot of de facto agreements with Mister Softee Vice President James F. Conway. The twenty-two franchises, says Amano, were created solely for the benefit of the four transferees. Conway, however, pressured Amano to remain the franchisee in title on the eight 2007

---

[5]   As noted in my preliminary injunction opinion, Mr. Tsirkos, too, stopped paying Mr. Softee royalties, stopped parking his trucks at the designated depot, and was enjoined from doing business pursuant to the non-compete provision. *See Mister Softee, Inc. v. Tsirkos*, No. 14-CIV-1975, 2014 WL 2535114, at *7 (S.D.N.Y. June 5, 2014).

Franchise Agreements and also to become the franchisee in title on the fourteen 2012 Franchise Agreements. (Def. Br. 3; Amano Cert. ¶¶ 11–12). Amano also alleges that Conway required him to remain the responsible party in title on the Truck Notes (Def. Br. 4; *see* Keppler Cert., Ex. B 30:15–31:17). According to Amano, his name remains on each and every one of the relevant contracts as the result of Conway's coercion. (Def. Br. 4; Def. Counter. ¶¶ 16, 18–19).[6]

The Plaintiffs, on the other hand, point out that Amano's sale of the franchisees was an instalment sale that will not be completed until 2019. They contend that Amano retained title in order to secure the four transferees' payment obligations. Only upon the final annual payment in 2019 will Amano officially transfer the franchises pursuant to Section 17 of the Franchise Agreements. (Pl. PI Reply 1; Pl. SUF ¶¶ 18–19).[7] It is undisputed, in any event, that Amano's name appears as the obligated party on each of the twenty-two Franchise Agreements as well as the two Truck Notes.

Amano moved his trucks from the Manida Street Depot to the unapproved Tsirkos Depot, which he manages,[8] in contravention of Section 6.15 of the Franchise Agreements, and also stopped making payments under the Truck Notes. (Pl. Br. 11; Compl. ¶¶ 33–33). Mister Softee regarded this as a manifestation of intent to abandon the Franchise Agreements. Mister Softee

---

[6]    Amano asserts he was only given the signature pages for the fourteen 2012 Franchise Agreements, "which he was compelled to sign," and that he was also "compelled to sign" the two Truck Notes even though the four transferees were the actual purchasers and titleholders of the trucks. (Def. Br. 4; Amano Cert. ¶¶13–17). He claims he feared Mister Softee would "push" him out of his job at the Manida Street Depot commissary if he resisted. (Amano Cert. ¶ 17). Because neither Amano's memorandum of law in opposition nor his Amended Answer raises duress as a defense to breach of contract, I consider these allegations as intended only to portray Mister Softee's sharp management and litigation practices.

[7]    Pursuant to Section 17, Spabo had the right to approve any proposed assignment of the Franchise Agreements by Amano to third parties.

[8]    Amano submits that it was the four transferees, not he, that moved the trucks out of the Manida Street Depot, since he had already sold his franchises by that time. (*See* Keppler Cert., Ex. B 25:20–26:5).

therefore sent Amano a notice of termination on February 18, 2014, which
Amano received the following day. (Pl. Br. 11).

Neither Amano's relocation to the unapproved depot nor Amano's receipt
of the notice is disputed. What is disputed is Amano's compliance with his
post-termination obligations—mainly, ceasing use of and returning Mister
Softee's trademarks and other intellectual property and adhering to the non-
compete provisions of the Franchise Agreements. (Pl. Br. 11). Mister Softee
alleges that Amano breached these obligations when his trucks continued to be
operated—unaltered in appearance and in his former Mister Softee territories—
following termination. (*Id.*).

Amano denies responsibility for the four transferees' use of the trucks
and trademarks. (Def. Br. 1). He admits to having "pass-through" responsibility
for forwarding payments from the four transferees to Mister Softee. (Def. Br. 8
n.7; Amano Cert. ¶ 14). He stresses, however, that after his transfer of the
franchises, he personally participated in the ice cream industry only by
managing an ice cream wholesale business located at the Tsirkos Depot. (Def
Br. 2–3; Amano Cert. ¶¶ 9–10).[9]

This Court previously found Amano's abdication of responsibility
unavailing, and explained:

> Amano, however, is still the owner of the franchises; he is the signer
> of the twenty-two Franchise Agreements on which Mister Softee
> bases its claims. He says he is the franchisee only "on paper," but
> the "paper" in question is a binding contract. Under the Agreements,
> Amano is the person obligated to de-identify the trucks, return all
> copyrighted and trademarked materials, and cease using them. No
> one denies that these trucks are still in use and are still selling
> Mister Softee products under the Mister Softee trademark.

---

[9]      Amano also states in a certification submitted with his briefing that in 2012, at
the Manida Street Depot, he managed a commissary owned and operated by Spabo.
(Amano Cert. ¶ 16). Assuming that this might technically involve the retail sale of ice
cream, I assume that Mister Softee would not regard it as a violation of the non-
compete provision.

Amano has outsourced the operation of the infringing trucks, but he is still the responsible party. The four transferees have not taken over the franchises; even if the franchises had not been cancelled, the actual transfer would not have taken place earlier than 2019, when the last instalment payment was made on the notes. Having maintained title to the trucks, and stayed on the Agreements as franchisee to secure that debt, Amano cannot walk away from that status for purposes of these claims only.

*Amanollahi I* at *6. Amano has not raised any new colorable defense or submitted additional evidence to disturb this finding.

In addition to infringement and non-compete claims, Mister Softee alleges that Amano owes certain amounts as well as attorney's fees and costs under the Franchise Agreements and Truck Notes.[10] Under the Franchise Agreements, in addition to attorney's fees and costs, Spabo seeks the minimum $3,400/year royalty fee multiplied by the number of years remaining in the term of the Franchise Agreements, which amounts to $462,400 for all 22 franchises (Pl. Br. 23–24). Under the Truck Notes, Amano allegedly owes MSSM a balance of $10,530.45.[11] MSSM also seeks $920.40 for repairs and maintenance performed on the trucks under a theory of unjust enrichment. (Pl. Br. 12).

Amano repeats that because he sold his franchises to the four transferees, who are the "true owners and users" of the two trucks—all with the knowledge of Mr. Softee—he cannot be liable for royalties or outstanding payments under the contracts he signed. (Def. Br. 13–14). For these reasons, he contends, he also could not have been unjustly enriched by repairs made to

---

[10]    Amano suggests that because it is really the four transferees who are in default of their obligations under the Franchise Agreements and Truck Notes, they are "arguably" necessary parties under Federal Rule of Civil Procedure 19(a)(1). There has been no motion to join them.

[11]    The Mister Softee Plaintiffs arrive at this sum pursuant to Section 11.1 of the Truck Notes, which allows MSSM to accelerate all payments due upon default. Plaintiffs allege Amano failed to make August 2013 and September 2013 payments for lesser amounts. Acceleration of all payments offset by $100,000 MSSM purportedly collected from the four transferees, then adding interest, results in a balance of $10,530.45, as of January 18, 2016. (*see* Pl. Br. 12).

the two trucks. (*Id.* at 15). Finally, he challenges Plaintiffs' requests for attorney's fees as premature and inappropriate. (*Id.* at 18–19).

### D. Amano's Counterclaims

Amano has asserted counterclaims for breach of Spabo's Section 5 obligations to Amano under the Franchise Agreements and for its violation of NYFA Section 683, which requires franchisors to register an offering prospectus with the New York Department of Law and to furnish a copy to franchisees. (Am. Answer ¶¶ 15–34 & p. 8). Amano seeks compensatory damages, rescission of the 22 Franchise Agreements, and attorney's fees and costs. (*Id.*). Amano does not cross-move for summary judgment on his counterclaims and does not dispute Plaintiffs' argument that his NYFA counterclaim fails as a matter of law in light of uncontroverted evidence that Amano was "provided" with at least one prospectus. (Def. Br. 15; *see* Pl. Reply 7).

The Mister Softee Plaintiffs submit no evidence to counter Amano's deposition testimony that MSI and Spabo failed to train him, consult on inventory, provide ongoing consultation and advice, assist with and enforce quality control measures, and provide a safe and sanitary warehouse environment at the ice cream truck depot to which it designated Amano's trucks. (*See* Def. Br. 16 (citing Keppler Cert., Exs. A–B. (Amano's 2014 and 2015 deposition testimony))). Rather, in rejoinder, Mister Softee relies exclusively on Section 22.3 of the Franchise Agreements, which requires 30 days' notice prior to commencement of any action for damages. (Pl. Reply 8). They contend that Amano's failure to satisfy this condition precedent bars his breach of contract counterclaims.

### E. Procedural History

The procedural history is extensive, but the pertinent motion practice is as follows. Following my July 1, 2014 Order and Opinion granting a preliminary injunction, Plaintiffs filed a July 24, 2014 motion, replete with supporting evidence, to hold Amano and the four transferees in contempt for violating the July 1, 2014 Order (ECF No. 32). Plaintiffs filed a motion for

replevin on August 6, 2014 (ECF No. 41), seeking to take possession of the two trucks on which Amano had failed to make payments under the Truck Notes. The motion for replevin was terminated by Order of the Court (Magistrate Judge Steven C. Mannion) dated October 6, 2014, referring the case to mediation pursuant to Local Civ. R. 301.1 (ECF No. 58). Following a settlement conference on August 13, 2015, the parties filed a Stipulated Order in lieu of the contempt motion (ECF No. 97). Therein, Amano denied wrongdoing but agreed, *inter alia*, (1) to inform any owner or operator of infringing ice cream trucks parked at his employer's depot that they must de-identify their trucks of all Mister Softee trademarks and trade dress features or else (2) to eject the offending party from the depot. The Court (Magistrate Judge James B. Clark, III) ordered the same on August 25, 2015 (ECF No. 98).

Now before the Court is Plaintiffs' motion for summary judgment.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.P. 56(a); *see also Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

In deciding a motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992).

The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986). That "evidentiary burden" is discussed in the following sections.

13

## III.   DISCUSSION

### *Mister Softee's Claims*

### A. Permanent Injunction

Mister Softee asks me to convert my preliminary injunction order into a permanent one. In support of his request, he points to Amano's failure to adduce new facts. (Pl. Reply 2). Because I agree that Amano has not presented evidence to create a genuine dispute as to material facts, I will briefly recast my previous findings under the appropriate standard and issue a permanent injunction. *See Ciba-Geigy Corp. v. Bolar Pharm. Co.*, 747 F.2d 844, 847 (3d Cir. 1984) (lamenting the "confusion created when a district court converts an opinion granting a preliminary injunction into an opinion granting a permanent injunction without expressly recasting its findings accordingly").

I must consider the following four factors in determining whether to grant a permanent injunction: (1) whether Mister Softee has actually succeeded on the merits; (2) whether denial would irreparably harm Mister Softee; (3) a balancing of the harm that an injunction would inflict on Amano; and (4) whether the injunction would be in the public interest. *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001); *see also Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546 n.12, 107 S. Ct. 1396, 1404 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.").

### 1. Trademark Infringement

To state a Lanham Act claim for trademark infringement, 15 U.S.C. § 1114, and unfair competition, 15 U.S.C. § 1125(a)(1), a plaintiff must show three elements: "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000). At the time I issued the preliminary injunction to Mister Softee, the evidence was undisputed that

*somebody* had infringed Mister Softee's valid trademarks; Amano simply denied that he was personally responsible. *Amanollahi I*, 2014 WL 3110000, at *6.

Amano concedes the validity and ownership of Mister Softee's marks, but argues that it was the four transferees, not he, that "used" the Mister Softee marks. (Def. Br. 7, 10). These bare allegations miss the mark where, as here, the Plaintiffs have put forth undisputed evidence that Amano was the franchisee; that the four transferees continued to use Mister Softee's marks on Amano's trucks in an unquestionably confusing manner after termination of the Franchise Agreements; and that Amano supplied goods and services to the four transferees' illegal operations in the form of parking, supplies, and collection of royalties. (*E.g.*, Reino Cert., Ex. A 36:15–19; 42:3–43:2; Def. Br. 8 n.7). *See 800–JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273, 280 (D.N.J.2006) ("The theory of contributory infringement . . . requires proof of either an intent to induce another to infringe a trademark or continued supply of goods or services to one whom the supplier (contributory infringer) knows or has reason to know is engaging in trademark infringement.").

Amano denies that he is the franchisee under any of the Franchise Agreements (Def. Counter. ¶¶ 21–31). But these binding contracts leave no doubt that Amano bears legal responsibility to abide by their terms,[12] and no

---

[12] At best, Amano's argument that he was "coerced" into remaining the responsible party only "on paper" amounts to a defense that prior or contemporaneous agreements altered the plain meaning of the Franchise Agreements and Truck Notes—indeed altered them to the extent that he was not in fact obligated by the terms of the contracts at all. Even if Amano were to expressly make this argument (he does not), however, it would fail. As Section 21.1 of the Franchise Agreements state, "This agreement reflects the entire agreement between parties and may not be changed except by a written document signed by both parties." (FA § 21.1). This merger clause requires "full application of the parol evidence rule to bar the introduction of extrinsic evidence to alter, vary, or contradict the terms" of the Franchise Agreements. *Ixe Banco, S.A. v. MBNA Am. Bank, N.A.*, No. 07 CIV. 0432 (LAP), 2008 WL 650403, at *7 (S.D.N.Y. Mar. 7, 2008) (citing *Jarecki v. Shung Moo Louie*, 95 N.Y.2d 665, 669 (N.Y. 2001)).

Amano also implies in a footnote that the Franchise Agreements Mister Softee has submitted as part of the record on this motion were manipulated and that his signatures were obtained by fraud in the factum. (*See* Def. Br. 18 n.14)). Amano offers

evidence has been adduced to disrupt this Court's previous finding that, as the legally responsible individual, Amano also contributed to the infringement of Mister Softee's trademarks. As I explained at the preliminary injunction stage:

> Amano is currently supplying ice cream products to the four transferees currently operating the Mister Softee trucks. He was collecting their royalty payments and (at least for a time) forwarding them to Mister Softee. (Amano Dep. Tr. at 42:3-43:23). Their infringing sales are certainly the source of the four transferees' payments to Amano on the promissory notes. He is profiting from their infringement, and he is indisputably aware of it.

> Amano admits to providing assistance to the infringers in the form of depot services, including overnight parking and storage, in return for rental payments. Pl. Reply at 7 (citing Amano Dep. Tr. 38:7–21, 42:3-43:23). The depot in question is an unauthorized site under the Agreements Amano signed. And the court is not blind to the fact that Amano is managing the depot as an employee of Tsirkos, another defaulting franchisee who has continued to use M[ister] Softee's trademarks on his trucks. Amano does not really deny any of this.

*Amanollahi I,* 2014 WL 3110000, at *8. *See generally id.* at *6–8.

Amano's alleged compliance with the preliminary injunction is no defense to entry of a permanent one. (*See* Def. Br. 11–12). "[A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off." *Already, LLC v. Nike, Inc.,* 133 S. Ct. 721, 727, 184 L. Ed. 2d 553 (2013) (citation omitted) (distinguishing between situations where a defendant's conduct cannot reasonably be expected to recur from situations where a defendant is free to return to his old ways). *See also United States v. Gregg,* 32 F. Supp. 2d 151, 158–59 (D.N.J. 1998), *aff'd,* 226 F.3d 253 (3d Cir. 2000) (protestors'

---

no supporting evidence or genuine argument, and at any rate, such a defense fails where, as the record shows here, the aggrieved party had a basic understanding of the contract he executed. *See, e.g., Provident Bank v. Cmty. Home Mortg. Corp.,* 498 F. Supp. 2d 558, 574 (E.D.N.Y. 2007) ("Where, as here, there is no evidence that the mortgagors were unaware that they were signing mortgage notes, or were falsely informed as to the nature of the notes, fraud in the factum cannot be asserted as a defense . . . .").

observance of preliminary injunction did not moot case and eliminate the need for a permanent injunction).

Construing all inferences in favor of Amano, I nevertheless find that there is no genuine dispute of material fact as to Amano's contributory infringement of the Mister Softee marks.

2. The Non-Compete Provisions

Mister Softee asks that the preliminary injunctive relief based on the non-compete covenant be extended to a permanent injunction. *See Amanollahi I*, 2014 WL 310000, at *17–18 (limiting the scope of geographic and subject matter restrictions to engaging in retail (but not wholesale) ice cream sales within a five-mile radius of his former Mister Softee territories (rather than within any franchisee's territory)). Amano counters only that he is not competing with the Plaintiffs and has not "for nearly two, full years." (Def. Br. 11–12). To that extent, Amano is correct; the non-compete is for a term of two years, and by its terms expired on July 1, 2016.

It is nevertheless necessary to rule on Mister Softee's contentions. They are not moot because Mr. Softee seeks release of the $50,000 bond posted to secure the preliminary injunction. *See Am. Bible Soc. v. Blount*, 446 F.2d 588, 594–96 (3d Cir. 1971) (because plaintiff had posted an injunction bond upon issuance of a preliminary injunction, plaintiffs' demand for a permanent injunction was not moot despite effectively mooted subject matter); *see also Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553 (2d Cir. 2011) (holding that wrongfully enjoined parties are entitled to a presumption in favor of recovery against an injunction bond for provable damages). That is, Mister Softee must show actual success, rather than a likelihood of success, on the merits of the non-compete claims in order to demonstrate that Amano was not wrongfully enjoined.

As I explained above, compliance with a preliminary injunction is not a cognizable defense. To justify specific enforcement of the non-compete, Mister

Softee need only show that the restraint is reasonable, to the extent it protects Mister Softee's brand name, business goodwill, and ability to replace terminated franchisees. *See BDO Seidman v. Hirshberg,* 93 N.Y.2d 382, 388–89 (N.Y. 1999); *Carvel Corp. v. Eisenberg,* 692 F. Supp. 182, 186 (S.D.N.Y. 1988). Amano has failed to present evidence contrary to the findings in my July 1, 2014 Opinion. In fact, he states that he does not contest the validity of the non-compete provisions.[13] (Def. Br. 11). There being no material facts in dispute as to the enforceability of the non-compete provisions, I have no reason to depart from my prior holding. *See generally Amanollahi I,* 2014 WL 3110000, at *11–14.[14]

### 3. Irreparable Harm and the Public Interest

I reach the same conclusions with respect to the irreparable harm and public interest factors. At the preliminary injunction stage, Mister Softee established irreparable injury to its business as a matter of law if Amano continued to contributorily infringe the Mister Softee trademarks, and established that its business goodwill and client relationships would be harmed if the non-compete provision were not enforced. *Amanollahi I,* 2014 WL 3110000, at *14. Mister Softee also established that injunctive relief would benefit the public by preventing consumer confusion and enforcing reasonable contractual obligations. *Id.* at *13–15. Amano did not raise material factual disputes as to those factors then, and does not do so now.

---

[13]    Amano's contention that the Franchise Agreements were invalid at the inception is discussed in connection with his counterclaim for rescission, *infra.*

[14]    In *Amanollahi I, see id.* at *4–13, I looked to the preliminary injunction opinion of Judge Swain of the United States District Court for the Southern District of New York in a similar case involving Mister Softee. Since then, Judge Swain has found for the plaintiffs on the merits of their non-compete provision where the defendant failed to present evidence contrary to findings made at the preliminary injunction stage. *See Mister Softee, Inc. v. Tsirkos,* No. 14CV1975-LTS-RLE, 2015 WL 7458619, at *5 (S.D.N.Y. Nov. 23, 2015) (granting permanent injunction on motion for default judgment).

In opposition, Amano alleges that he is not liable for trademark infringement and has not competed with Mister Softee in years—incorrect and irrelevant arguments, respectively. He also says he would be unduly burdened by a permanent injunction, while simultaneously maintaining that he has no intention of re-entering the ice cream business. (Def. Br. 12–13; *see* Reino Cert., Ex. B 30:10–13). It is impossible to imagine how complying with federal trademark law would unduly burden Amano. Amano also argues that a permanent injunction will not benefit the public because children's predilection for ice cream makes them oblivious to distinctions between brands. This appeal to intuition lacks evidentiary support, but at any rate, "'brand indifferent' customers do not count in the equation of likelihood of confusion." *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 366 (3d Cir. 2007) (quoting 4 Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:5 (4th ed. 2007)).

\* \* \*

As there are no genuine factual disputes as to any of the requisite factors, I am ruling in favor of Mister Softee as to both trademark infringement and the non-compete provision. Mister Softee has not argued to extend the expiration date of the non-compete provision, and this Court has not been called upon to make any findings of fact on Mister Softee's motion for contempt, which might have warranted such an extension. (*See* Dkt. No. 97 (stipulated Order In Lieu of Contempt Motion)).[15] On this record, I must find that the non-compete provision expired on July 1, 2016. Therefore, so far as the non-compete provisions in this case are concerned, Amano may engage in the retail ice cream business in any of his former territories, provided he does not infringe Mister Softee's trademarks or violate any other provision of the agreements. Like the preliminary injunction, the permanent injunction extends

---

[15]    *Cf. Mister Softee, Inc. v. Tsirkos*, No. 14CV1975-LTS-RLE, 2015 WL 7458619, at *5 (S.D.N.Y. Nov. 23, 2015) (extending the non-compete beyond the two-year period because two contempt orders found that defendant had continued to operate in the restricted territories after the preliminary injunction).

to other persons who were in active concert or participation with Amano who received actual notice of the injunction.

### B. Recovery of Royalties

Beyond the permanent injunction, Mister Softee seeks a ruling that it is entitled to future royalties it would have received under the Franchise Agreements.

Section 19.2 requires Amano to pay Spabo "all unpaid fees" and "monies owed" upon termination. (FA § 19.2). The Agreements were terminated as of February 19, 2014. Amounts unpaid as of that date would have been owed.

What Spabo is claiming here, however, is an entitlement to lost *future* royalties in the amount of $462,400. Mister Softee calculates that amount by multiplying the number of remaining years on each of the 22 Franchise Agreements as of February 19, 2014—the date of termination—by the $3,400 minimum annual royalty fee contemplated under Section 4.2 of the agreements. (Pl. Br. 23–24). Amano again simply denies liability under the contracts by virtue of the 2009 sale of the franchises to the four transferees. For the reasons discussed above, that argument is unavailing. If the agreements had continued, Amano would have continued to owe the fees, subject to reimbursement under whatever arrangement he has with the transferees. But we are getting ahead of ourselves.

I must first consider the scope of Spabo's entitlement to future royalties. Under New York law,[16] plaintiffs seeking lost future profits must show that the loss was caused by the defendant's breach of contract, that the amount lost can be proven with reasonable certainty, and that the parties contemplated this type of damages at the time the contract was made. *Kenford Co. v. Erie Cty.*, 67 N.Y.2d 257, 261 (N.Y. 1986). "[T]he damages may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the result of intervening causes." *Id.* In

---

[16]    Pursuant to Section 22.1 of the Franchise Agreements, New York law applies. (*See* FAs).

determining whether the damages sought were within the reasonable contemplation of the parties, the Court may consider "the nature, purpose and particular circumstances of the contract known by the parties." *Travellers Int'l, A.G. v. Trans World Airlines, Inc.,* 41 F.3d 1570, 1578 (2d Cir.1994) (quoting *Kenford Co., Inc. v. County of Erie,* 73 N.Y.2d 312, 319 (N.Y. 1989)). Often these difficulties are addressed by the inclusion of a liquidated damages provision; that was not done here.[17]

I therefore consider more fundamental principles of law. Hornbook law supplies a starting point:

> When one party commits a material breach of contract, the other party has a choice between two inconsistent rights—it can either elect to allege a total breach, terminate the contract and bring an action or, instead, elect to keep the contract in force, declare the default only a partial breach, and recover those damages caused by that partial breach—but the nonbreaching party, by electing to continue receiving benefits under the agreement, cannot then refuse to perform its part of the bargain.

13 Williston on Contracts § 39:32 (4th ed.); *see also VFS Fin., Inc. v. Falcon Fifty LLC,* 17 F. Supp. 3d 372, 380 (S.D.N.Y. 2014) ("New York's doctrine of election of remedies provides that 'the non-breaching party must choose between two remedies—it can elect to terminate the contract and recover liquidated damages or it can continue the contract and recover damages solely for the breach.'" (quoting *ESPN, Inc. v. Office of Com'r of Baseball,* 76 F.Supp.2d 383, 387–88 (S.D.N.Y.1999)).

---

[17]   I also have severe doubts as to whether future royalties for the entire remainder of a ten-year term were reasonably within the contemplation of the parties. Indeed, the provision imposing that ten-year term suggests that they were not contemplated: "The term of this Agreement shall be for ten (10) years, *unless earlier terminated* in accordance with this Agreement . . . ." (FA § 3.1 (emphasis added)).

It also does not seem equitable that Mister Softee may, without any effort to mitigate, simply collect up to ten years' worth of royalties on an agreement it terminated. In connection with the preliminary injunction, I found that two years was a reasonable duration for the non-compete, because that was an adequate time for Mister Softee to obtain substitute franchisees. Neither side has submitted relevant proofs, however, and Mister Softee, as the party with the burden of proof, will not prevail on this issue.

The case law as to similar terminated franchise arrangements confirms that lost future royalties are not routinely available as damages. In *ATC Healthcare Services, Inc. v. Personnel Solutions, Inc.*, a federal trial court applying New York law to a terminated franchise agreement declined to award lost future royalties where the plaintiff elected to terminate the contract rather than sue for an ongoing breach based on missed royalty payments. The court determined that the plaintiff's own actions, *i.e.*, the termination, and not the defendant's breach directly deprived it of future royalties that would have been generated. No. 01 CV 762 CBA, 2006 WL 3758618, at *11–12 (E.D.N.Y. Dec. 19, 2006); *see also Kissinger, Inc. v. Singh,* 304 F. Supp. 2d 944, 949–51 (W.D. Mich. 2003) (applying similar proximate cause analysis).

Other courts applying state laws similar to New York's have consistently reached the same result:

> Defendants have cited multiple cases where future lost profits were not awarded under franchise agreements where, as in this case, the agreement was terminated by the franchisor, even when the breach was caused by the franchisee's failure to make royalty payments. *Kissinger, Inc. v. Singh,* 304 F. Supp. 2d 944 (W.D. Mich. 2003); *Postal Instant Press, Inc. v. Sealy,* 43 Cal. App. 4th 1704 (1996); *Burger King Corp. v. Hinton, Inc.,* 203 F. Supp. 2d 1357, 1366 (S.D. Fla. 2002); *I Can't Believe It's Yogurt v. Gunn,* 1997 WL 599391, at *23-24 (D. Colo. Apr. 15, 1997).

*Dunkin' Donuts, Inc. v. Arkay Donuts, LLC*, No. CIV. 05-387 (WHW), 2006 WL 2417241, at *5 (D.N.J. Aug. 21, 2006) (reaching the same result under New Jersey law and collecting cases from other jurisdictions).

Here, Mister Softee decided to terminate Amano's Franchise Agreements because Amano moved his trucks out of the Manida Street Depot and stopped making payments under the Truck Notes.[18] Mister Softee faced a choice:

---

[18]     Mister Softee misstates that under Sections 18.2.11 and 18.2.4, the Franchise Agreements automatically terminate upon Amano's abandonment or breach of agreements (i.e., leaving the Manida Street Depot and stopping payments on Truck Notes) (*see* Pl. Br. 10; Pl. SUF ¶¶ 28–29). The contract language is clear, however, that "SPABO has *the right to terminate* this Agreement, effective upon delivery of the notice of termination," for these occurrences. (*See* FA § 18.2, 18.2.4, 18.2.11; *cf. id.* at 18.1

terminate the Agreements, or remain within the Agreements and sue for the ongoing unpaid royalties. It chose the former. On the record currently before me, Amano is not as a matter of law entitled to future royalties under the Franchise Agreements. Amano's motion for summary judgment must be denied on this count.[19]

### C. Recovery of Amounts Due Under the Truck Notes

Under the Truck Notes, Mister Softee seeks $9,348.21 allegedly due as of May 18, 2015, plus 1.75% in prejudgment interest per month. Each Truck Note provides that upon an event of default—which includes failure to make payments due—MSSM has the right to accelerate all payments. (TN § 11.1).[20] The Truck Notes also clearly provide for 1.75% monthly interest on overdue payments. (Id. § 4). Mister Softee submits evidence showing that Amano failed to make scheduled monthly payments under the notes in August and September of 2013. (Reino Cert., Ex. F). And a certification by Mister Softee Vice President James F. Conway, Jr. attests that Mister Softee agreed to release the liens on the two trucks secured under the notes in exchange for a $100,000 payment by the four transferees, leaving a balance of $9,348.21. (Conway Cert. ¶¶15–16). With prejudgment interest accruing from May 18, 2015, Mister Softee submits it is entitled to $10,530.45, as of January 18, 2016. (Pl. Br. 12).

Amano does not offer evidence in opposition or dispute these overdue amounts. Again, he only argues that he does not "own" the trucks and that Mister Softee is aware of this fact. (See Def. Counter. ¶¶ 39–43). For reasons

---

(contemplating automatic termination of the Franchise Agreement upon certain other occurrences)).

[19]   Judge Swain did award lost future royalties in *Tsirkos*, No. 14CV1975-LTS-RLE, 2015 WL 7458619, at *5 (S.D.N.Y. Nov. 23, 2015), but on a motion for default judgment. Although consistent application of the franchise agreements is generally desirable, in this contested matter I find otherwise.

[20]   Pursuant to Section 19, New Jersey law governs disputes arising out of the Truck Notes. (TN § 7.1).

articulated in *Amanollahi I, see* 2014 WL 3110000, at *6, and above, this argument fails. Amano admits both to being responsible for payments under the Truck Notes and to being the legal signatory and debtor under the notes. (*See, e.g.*, Reino Cert., Ex. A 35:19–38:6 (testifying that he signed and took responsibility for payments under the Truck Notes even though the Four Transferees immediately took possession of the trucks because he expected to profit from their business at his depot commissary)). Having introduced no written amendments releasing him or naming the four transferees as debtors under the Truck Notes, Amano cannot simply remove himself from the process and tell Mister Softee to go after the transferees. MSSM is entitled to recover the $9,348.21 balance from Amano.

Whether MSSM may recover pre-judgment interest on this balance requires additional analysis. Pre-judgment interest "on contract and equitable claims is based on equitable principles," and lies within the court's discretion. *County of Essex v. First Union Nat. Bank,* 186 N.J. 46, 61, 891 A.2d 600, 608 (2006).[21] The district court may exercise this discretion based upon "considerations of fairness," and an award of prejudgment interest may be denied "when its exaction would be inequitable." *Thabault v. Chait,* 541 F.3d 512, 533 (3d Cir.2008) (quoting *Ambromovage v. United Mine Workers of Am.,* 726 F.2d 972, 982 (3d Cir.1984)). Under New Jersey law, "the purpose of prejudgment interest is to 'compensate the plaintiff for the loss of income that would have been earned on the judgment had it been paid earlier.'" *Id.* (quoting *Ruff v. Weintraub,* 105 N.J. 233, 244–45 (1987)).

Finding no genuine dispute of material facts and, finding no reason to depart from the contractual interest rate or the unchallenged date of accrual MSSM submits, I will grant summary judgment in favor of Mister Softee on the balance of $9,348.21 plus prejudgment interest at the 1.75% monthly rate to

---

[21]   New Jersey law governs this Court's ability to award pre-judgment interest. *See Jarvis v. Johnson,* 668 F.2d 740, 748 (3d Cir.1982) (reaffirming a district court ruling that the New Jersey pre-judgment interest rule had to be applied in federal court under *Erie*).

which the parties contractually agreed, accruing from May 18, 2015. Post-judgment interest will accrue in accordance with 28 U.S.C. § 1961 from the date judgment is entered.

### D. Unjust Enrichment

Under a theory of unjust enrichment, Mister Softee seeks to recover $1,362.15, inclusive of interest,[22] that MSSM spent to repair Amano's two trucks secured under the Truck Notes.

In broad strokes, to recover for unjust enrichment under New Jersey law,[23] a plaintiff must show first, that it conferred a benefit on the defendant and second, that the defendant's retention of that benefit without payment would be unjust. *Heyman v. CitiMortgage, Inc.*, No. CV 14-1680 (KM), 2015 WL 5921199, at *9 (D.N.J. Oct. 9, 2015). More specifically, the plaintiff must show that it "expected remuneration from the defendant at the time it performed or conferred a benefit and that the failure of remuneration enriched defendant beyond its contractual rights." *Nelson v. Xacta 3000 Inc.*, No. CIV.A.08-5426 (MLC), 2009 WL 4119176, at *7 (D.N.J. Nov. 24, 2009) (quoting *Va. Sur. Co. v. Macedo*, No. 08–5586, 2009 WL 3230909, at *11 (D.N.J. Sept.30, 2009)). New Jersey courts interpret the requirement that a plaintiff must confer a benefit on the defendant as requiring that "the plaintiff allege a sufficiently direct

---

[22]    Mister Softee arrives at this figure by taking the $920.49 MSSM spent on repairs plus 1.5% monthly prejudgment interest from October 1, 2013, to the time of filing and subtracting an unspecified credit to Amano for $16.05. (Pl. Br. 25; Reino Cert., Ex. H).

[23]    As Mister Softee's unjust enrichment claim is asserted outside of the contracts, the Franchise Agreements' and Truck Notes' choice of law provisions do not apply. As a federal court adjudicating state law claims that are pendent to a federal trademark claim, I must apply New Jersey choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S. Ct. 1020, 1021–22, 85 L. Ed. 1477 (1941). As numerous courts have held that unjust enrichment laws do not significantly vary from state to state, and the parties point to no relevant conflict, I will apply New Jersey law. *See Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 723 (D.N.J. 2011) (collecting cases finding no actual conflict among states' unjust enrichment laws).

relationship with the defendant to support the claim,"[24] or else a mistake on the part of the person conferring the benefit, *see Napier v. Pub. Serv. Elec. & Gas Co.*, No. A-4532-12T1, 2014 WL 3444670, at *4 (N.J. Super. Ct. App. Div. July 15, 2014). *See also Avram v. Samsung Elecs. Am., Inc.*, No. CIV. 2:11-6973 (KM), 2013 WL 3654090, at *21 (D.N.J. July 11, 2013).

An unjust enrichment claim must fail, however, where an express contract governs the relationship between the parties on the same subject matter. *See In re Phillips/Magnavox Television Litig.*, No. CIV.A. 09-3072 PGS, 2010 WL 3522787, at *10 (D.N.J. Sept. 1, 2010); *Moser v. Milner Hotels, Inc.*, 6 N.J. 278, 280 (1951)) ("It is a well settled rule that an express contract excludes an implied one. An implied contract cannot exist when there is an existing express contract about the identical subject." (internal quotation marks omitted)).

Neither party attempts to apply these nuanced requirements to the facts at hand with any particularity. Amano argues he was not "enriched"—*i.e.*, that the four transferees, not he, benefited. Indeed, he claims he was not even aware of the repairs at the time they were made. (Def. Br. 15; Def. Counter. ¶¶ 46–47). Mister Softee contends that regardless of who actually possessed the trucks, Amano benefitted from the repairs because the four transferees paid rent to Amano to park the trucks in his depot and also purchased supplies from Amano's commissary. (Pl. Reply 6–7).

Mister Softee has failed to show the absence of genuine and material issues of fact. There is no evidentiary basis for Mister Softee's claim that it reasonably expected remuneration from Amano for repairs. Work orders and a monthly billing statement sent to "Metro Softee Inc." at the Manida Street Depot do not really speak to the issue. (*See* Reino Cert., Exs. G–H).

---

[24]   *Nelson v. Xacta 3000 Inc.*, Civ. No. 08-5426, 2009 WL 4119176, at *7 (D.N.J. Nov.24, 2009) (citing *Maniscalco v. Brother Int'l Corp.*, 627 F. Supp. 2d 494, 505–06 (D.N.J. 2009)).

There may also be an issue as to whether the parties' explicit contract allocates repair expenses to Mister Softee or to the franchisee. Mister Softee submits work orders for the repairs and seeks prejudgment interest at a rate of 1.5% per month, seemingly on the basis of a monthly billing statement. (*See id.*). The silence of the Franchise Agreements may mean that the parties did not think it was important, or left it to be worked out informally. Finally, I cannot find any manifest injustice in MSSM's expenditure of a relatively small sum to service trucks from which its affiliates were still profiting in October of 2013 (i.e., over four months prior to termination of the Franchise Agreements). Mister Softee's motion for summary judgment on this claim is therefore denied.

### E. Recovery of Attorney's Fees

Mister Softee asks that I rule as a matter of law that it is entitled to an award of reasonable attorney's fees and litigation costs pursuant to Section 9 of the Franchise Agreements, Section 13 of the Truck Notes, and the Lanham Act itself, *see* 15 U.S.C. § 1117(a). Under New York law, which applies to the Franchise Agreements, "a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008). Similarly, under New Jersey law, which applies to the Truck Notes, "contracts which permit the aggrieved party to recover fixed or reasonable attorney's fees as part of his or her damages are enforceable unless some larger public policy mandates a contrary result." *Merrill Lynch Bus. Fin. Servs. Inc. v. Comtel Techs., Inc.*, No. CIV. 06-4247 (DRD), 2006 WL 3327885, at *3 (D.N.J. Nov. 14, 2006) (quoting *Belfer v. Merling*, 322 N.J. Super. 124, 141 (App. Div. 1999)).

Section 9 of the Franchise Agreements provides that, if a franchisee is in breach of any material obligation under the Franchise Agreements or related agreements, and if Mister Softee "engages an attorney to enforce its rights (whether or not formal judicial proceedings are initiated), [franchisee] shall pay all reasonable attorney's fees, court costs and litigation expenses [Mister Softee]

incurs." (FA § 9). Section 13 of the Truck Notes provides that if MSSM uses an attorney "to enforce this obligation or to protect the collateral secured," the buyer "shall pay to MSSM the collection costs incurred . . . and the costs of suit, including attorney's fees and costs in any appeal taken, but in no event shall this sum for attorney's fees be less than 15% of the outstanding and unpaid indebtedness." (TN § 13).

That seems clear enough. *See Mister Softee, Inc. v. Tsirkos*, 2015 WL 7458619, at *6 (awarding Mister Softee attorney's fees under the same provision of the franchise agreements on a motion for default judgment). I perceive no ambiguity requiring factual development at trial. *See Celanese Ltd. v. Essex Cty. Improvement Auth.*, 404 N.J. Super. 514, 528 (App. Div. 2009) ("The interpretation of a contract is ordinarily a legal question for the court and may be decided on summary judgment unless there is uncertainty, ambiguity or the need for parol evidence in aid of interpretation." (internal quotation marks omitted)); *Gen. Phoenix Corp. v. Cabot*, 300 N.Y. 87, 92 (1949) ("Where the intention of the parties may be gathered from the four corners of the instrument, interpretation of the contract is a question of law.").

Amano does not argue otherwise, or identify any countervailing public policy; he asserts only that an award of attorney's fees is premature and that it would be inequitable to permit Mister Softee to "profit off their own misdeeds." (Def. Br. 18). Mister Softee's entitlement to fees, however, is clear. To fix the amount, I agree, would be premature, but I will require appropriate submissions in connection with entry of final judgment. *See Merrill Lynch Bus. Fin. Servs. Inc.*, 2006 WL 3327885, at *3 ("[A] claim for attorney's fees 'is an element of damages which must be proved in the same manner as any other item and which must be assessed by the finder of fact as a matter of right and in the actual amount established by the proofs.'" (quoting *Belfer*, 322 N.J. Super. at 141)); *Latona v. Latona*, 621 N.Y.S.2d 973 (App. Div. 1994) ("Attorney's fees should not be awarded without conducting a hearing or requiring proof by affidavit substantiating the attorney's fees requested.").

28

Because Mister Softee is entitled to reasonable attorney's fees under the contracts, I do not reach the redundant issue of attorney's fees under 15 U.S.C. § 1117(a). Upon final judgment in this action, Mister Softee may prove up its attorney's fees and expenses pursuant to Federal Rule of Civil Procedure 54(d), and Amano will be given the opportunity to dispute any such submission.

### *Amano's Counterclaims*

Mister Softee seeks to dispose of Amano's counterclaims by summary judgment. Its burden is to show that there is no genuine dispute of material fact, or more simply that there is an absence of evidence supporting Amano's case. *See Celotex*, 477 U.S. at 325.

## F. Rescission of the Franchise Agreements

I found in *Amanollahi I* that Amano's claims for rescission under NYFA Section 683 with respect to the eight 2007 Franchise Agreements are barred by the three-year statute of limitations.[25] I also found sufficient evidence that Amano admitted receiving at least one prospectus satisfying Section 683. 2014 WL 3110000, at *11. Moreover, I found no evidence that any failure to provide a prospectus was willful or material—a required showing for rescission of a franchise agreement under New York General Business Law Section 691. *Id.* at *10. Amano has put forth no new evidence to challenge this preliminary determination. Indeed, his brief offers no rejoinder at all to Plaintiffs' argument regarding this counterclaim. Finding no genuine dispute of material fact, I will grant Mister Softee's motion for summary judgment denying this counterclaim for rescission.

## G. Breach of the Franchise Agreements

Amano claims that Mister Softee breached its obligations under the Franchise Agreements to provide training, periodic assistance, continuing consultation, and advice on such subjects as inventory and quality control standards. He also claims that Mister Softee breached its obligation to provide

---

[25]   Amano admits this much in his brief. (*See* Def. Br. 15).

a clean and safe warehouse environment at prescribed truck depots. (*See* Am. Answer ¶¶ 32–34). Amano seeks money damages for these breaches. (*Id.* ¶ 34 & p.8).[26]

Mister Softee argues that Amano's counterclaim should be disposed of as a matter of law because Amano did not comply with the condition precedent of 30 days' written[27] notice set forth in Section 22.3 of the Franchise Agreements:

> As a condition precedent to commencing an action for damages or for violation or breach of this Agreement, you must notify Spabo within thirty (30) days after the occurrence of the violation or breach and failure to timely give notice shall preclude any claim for damages.

New York courts[28] require that a condition precedent be clear and unmistakable. *See Bank of New York Mellon Trust Co. v. Morgan Stanley Mortgage Capital, Inc.*, 821 F.3d 297, 305 (2d Cir. 2016). Where they are clear, however, "conditions precedent are strictly enforced to implement the parties'

---

[26]      To be clear, these are counterclaims, not defenses. Any defect in Spabo's performance does not shield Amano from complying with the terms of the Franchise Agreements or paying amounts owed thereunder. "[U]nder settled franchise law, the non-breaching party may not stop performance while continuing to take advantage of the contract's benefits." *Red Roof Franchising, LLC v. Patel*, 877 F. Supp. 2d 124, 133–34 (D.N.J. 2012); *see also McDonald's Corp. v. Robert A. Makin, Inc.*, 653 F. Supp. 401, 403 (W.D.N.Y.1986) (failure of defendants to pay the monthly franchise fees was breach of the contract despite alleged wrongs of plaintiff and defendants could not use their counterclaims to avoid judgment for amounts already due under franchise agreement); *Maguire v. Campagnoli & Co.*, 17 N.Y.S.2d 129, 131–32 (Sup. Ct. N.Y. 1939) ("[I]t is against the law as well as sound morals to permit a party to a contract to repudiate the contract or his obligation under it, and at the same time retain the consideration that he has received."). Amano (and/or the four transferees he enabled and from whom he profited) continued to make use of Mister Softee's trademarks and other services throughout the time Amano alleges Spabo breached its franchisor duties and even after termination of the franchises.

[27]      Section 22.3 does not itself require that the notices be written. Section 20, however, requires that all notices under the Franchise Agreement be in writing. Therefore, the effect of the two sections in combination is to require written notice under Section 22.3.

[28]      I again apply New York law pursuant to the choice of law provision in the Franchise Agreements. *See* FA § 22.1.

express agreement," and will only be excused if the party who benefits wrongfully hindered or prevented their occurrence. *Eastman Kodak Co. v. Bostic*, 91-CIV-1797 (LJF), 1991 WL 243378, at *3 (S.D.N.Y. Nov. 14, 1991); *see David Fanarof, Inc. v. Dember Const. Corp.*, 600 N.Y.S.2d 226 (App. Div. 1993) ("When commercial parties expressly agree that a specified occurrence shall be a condition precedent to the creation or enforceability of a right or obligation, and there is no ambiguity arising out of other language in their contract, the only question for the court is whether the condition precedent has been complied with."); *see also Clayton Indus., Inc. v. City of Newburgh*, 792 N.Y.S.2d 587, 588 (App. Div. 2005) (failure to serve written notice of claim prior to commencing action was failure to comply with condition precedent and grounds for judgment in favor of defendant). Even arguably substantial compliance with an express condition precedent—such as oral rather than written notice—is generally rejected as unsatisfactory. *See, e.g., Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 692–96 (1995) (collecting cases).

Amano concedes, or at any rate does not contest, Mister Softee's interpretation of the Section 22.3 notice requirement. I nevertheless raise an interpretive issue. This section—drafted as a single sentence—states initially that timely notice is "a condition precedent to *commencing an action* for damages or for violation or breach of this Agreement." (FA § 22.3; emphasis added. I refer to this as "clause 1."). Because a counterclaim does not "commence" an action, the literal application of clause 1 to Amano's counterclaim is uncertain.[29] On the other hand, the next clause of the sentence adds that that "failure to timely give notice shall preclude *any claim for*

---

[29]     A counterclaim does not commence an action. *See, e.g.*, Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."); N.Y.C.P.L.R. 304 (McKinney) ("An action is commenced by filing a summons and complaint or summons with notice."); *see also Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Pelella*, 350 F.3d 73, 82 (2d Cir. 2003) ("[A] defendant does not 'institute' an action when he asserts a counterclaim. Rather, a plaintiff must *commence* the action by filing a complaint that names a defendant." (emphasis added)).

31

*damages.*" (*Id.*; emphasis added. I refer to this as "clause 2."). Amano's counterclaim falls within that latter, clause 2 definition. Clause 1, then, has a narrow preclusive effect (it applies only to "commencing an action"), but a broader subject matter (it applies to an action for damages, *or* for violation or breach of the Agreement, which could include, *e.g.,* a claim for specific performance or injunctive relief). Clause 2 has a broader preclusive effect (it precludes "any claim", not just commencement of an action), but a narrower subject matter (it applies only to a "claim for damages"). A court interpreting a contract should do so in a way that makes sense of the drafting, so that no part is rendered inexplicable or superfluous. *See Solco Plumbing Supply, Inc. v. Hart*, 999 N.Y.S.2d 126, 128 (App. Div. 2014).

Clause 1 is seemingly aimed at enforcing a pause, so that disputes can be adjusted before involving the courts. Clause 2 ensures that, in any case, Mister Softee will not pay damages for any lapse of which it was not properly notified. Mister Softee's interpretation of Section 22.3, which in any event is not contested, is a reasonable one.

Rather than dispute Mister Softee's interpretation of Section 22.3, Mr. Amano argues that he substantially complied with the notice requirement. He cites his own deposition testimony that he raised his grievances to Spabo orally over the course of their relationship. (*See* Keppler Cert., Ex. B ¶¶ 43-54). He admits he never furnished notice in writing, but argues that the writing requirement is "*de minimis.*" (Def. Br. 18; Def. Counterstatement ¶¶ 52–57). I find these arguments insubstantial. The purpose of Section 22.3 is apparent: it aims to allow the parties to work out the routine complaints that arise in the relationship without resort to litigation. The requirement of written notice is a guarantor of clarity, and is therefore reasonable and essential. Claims that oral complaints were made, years after the fact, are precisely what this requirement was designed to avoid. Mister Softee is therefore within its rights in insisting on compliance.

Amano also seems to suggest that Mister Softee waived its right to enforce the condition precedent by choosing not to enforce other provisions of the Franchise Agreements. (Def. Br. 17–18). But in support, Amano points only to the fact that Mister Softee did not exercise its right under Section 18.2.1 to terminate the Franchise Agreements for Amano's failure to complete initial training (which he claims Mister Softee did not actually offer). Amano's argument fails. The plain language of Section 18 makes clear that a franchisee's failure to complete training is an occurrence upon which Mister Softee may elect to terminate the franchise relationship; it is not bound to do so, nor is termination automatic. (*See* FA § 18.2–18.2.1 ("SPABO has the right to terminate this Agreement . . . If you fail to complete initial training as provided in Section 7.")). Moreover, the Franchise Agreements do not detail what training entails and it is clear that whether a franchisee has completed training is a determination within Mister Softee's discretion. (*Id.* § 7 ("You shall attend and satisfactorily complete Mister Softee's training program. Mister Softee and/or Spabo will train you . . . and one other individual tuition-free.")).

It is hornbook law that "[t]he waiver of one right under a contract does not necessarily waive other rights under the contract; rather, the parties to a contract may waive parts of its provisions." 13 Williston on Contracts § 39:18 (4th ed.). Waiver requires knowing, voluntary, and intentional abandonment of contractual rights, which should only be found upon "a clear manifestation of intent to relinquish a contractual protection." *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 7 N.Y.3d 96, 104 (2006) (internal quotation marks omitted). "Generally, the existence of an intent to forgo such a right is a question of fact," *id.*, but here, I find that Amano has failed to raise any genuine question of material fact to suggest that Mister Softee intended to waive the protection of the wholly unrelated Section 22.3 condition precedent.[30]

---

[30]     *See Russo v. Rozenholc,* 13 N.Y.S.3d 391, 395 (App. Div. 2015) ("A party asserting a waiver of rights has the burden of establishing that the purported waiver constituted an intentional, voluntary relinquishment of a known right."); *225 Fifth Ave. Retail, L.L.C. v. 225 5th L.L.C.*, No. 601659/07, 2009 WL 2208336, at *10 (N.Y. Sup.

For these reasons, I grant Mister Softee's motion for summary judgment dismissing the breach of contract counterclaims based on lack of notice under Section 22.3.

## V. RELEASE OF INJUNCTION BOND

Amano has not answered Mister Softee's motion to release the bond that it posted as a condition of this Court's issuance of the July 1, 2014 preliminary injunction.[31] The preliminary injunction as to which the bond served as security has now expired. As I have already found, Amano was not wrongfully enjoined under the July 1, 2014 Order, and the purpose of the bond has been discharged. *See* Section III.A.2, *supra*. That being the case, the bond itself will be discharged, and I will grant Mister Softee's motion to vacate the bond and release the posted collateral.

## VI. CONCLUSION

For the foregoing reasons, Mister Softee's motion for summary judgment is **GRANTED** as to Mister Softee's request for a permanent injunction, entitlement to the balance due under the Truck Notes, dismissal of Amano's counterclaims, and entitlement to reasonable attorney's fees in an amount to be proven in connection with entry of final judgment.

---

Ct. July 7, 2009), *aff'd sub nom. 225 Fifth Ave. Retail LLC v. 225 5th, LLC*, 915 N.Y.S.2d 1 (App. Div. 2010) (finding no waiver as a matter of law where there was no question of fact as to whether plaintiff had demonstrated a clear manifestation of intent to relinquish the protection of a certain contractual provision); *Sulner v. G.A. Ins. Co. of New York*, 637 N.Y.S.2d 144, 145 (App. Div. 1996) (affirming dismissal on summary judgment because insured's "unsupported, conclusory allegation that the insurer's adjusters led her to believe that defendants were waiving their right to enforce [an] express condition precedent in the policy [was] wholly insufficient to establish such a clear manifestation of intent (internal quotation marks and citation omitted)).

[31]     Counsel for Mister Softee notes that counsel for Amano has not responded to several inquiries as to whether Amano would oppose Mister Softee's motion to release the injunction bond. (ECF No. 128). As Amano has failed to submit any memorandum of law in opposition to Mister Softee's motion by the September 19, 2016 return date, I will consider the motion uncontested, but nevertheless analyze it for sufficiency.

Summary judgment is **DENIED** as to Spabo's entitlement to future royalties and MSSM's recovery of repair costs under a theory of unjust enrichment.

The Clerk of the Court is directed to release the Plaintiffs' $50,000 bond deposited as security pursuant to the Court's Preliminary Injunction Order, and to return the bond to Fisher Zucker, LLC on behalf of the Plaintiffs.

Reza Amanollahi and his agents, employees and any persons acting in concert with him who have actual knowledge of this injunction are hereby permanently enjoined from:

1.      unlawfully using Mister Softee's trademarks or trade dress or any colorable imitation thereof;

2.      knowingly contributing to the infringement of Mister Softee's trademarks or trade dress in any manner whatsoever including, but not limited to:

a.      renting or otherwise providing space to park or store ice cream trucks at a commissary or depot to entities or individuals unlawfully using Mister Softee's trademarks or trade dress or any colorable imitation thereof; and

b.      selling or otherwise providing ice cream products, ice cream mix, other frozen confections, and the supplies and equipment necessary to operate an ice cream truck business to individuals or entities that unlawfully use Mister Softee's trademarks or trade dress or any colorable imitation thereof.

Counsel shall arrange for a conference call with the Court within 10 days, in order to identify outstanding claims and identify the steps required to poise the case for final judgment.

**KEVIN MCNULTY**
**United States District Judge**

DATED: September 30, 2016